IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

**THOMAS BITNER** and
**TOSHIA PARKER,**
individually and on behalf
of those similarly situated,

        Plaintiffs,    Case No: 3:13-cv-00451-wmc

vs.

**WYNDHAM VACATION RESORTS, INC.**

        Defendant.

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

## INTRODUCTION

  In their Collective and Class Action Complaint, Plaintiffs Thomas Bitner and Toshia Parker ("Plaintiffs"), individually and on behalf of those similarly situated, state, in significant detail, claims against Defendant, Wyndham Vacation Resorts, Inc. ("Defendant"), for violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), Wisconsin state law, Wis. Stat. §§ 103.03, 104.03 and 109.03, and Wis. Admin. Code §§ DWD 272.03 and 274.03. Plaintiffs' Complaint alleges that Defendant engaged in an unlawful compensation policy that required Plaintiffs to work off-the-clock and in excess of forty hours per workweek without proper minimum wage and overtime compensation. The unlawful policy includes, but is not

1

limited to: (1) requiring Plaintiffs and putative class members to clock out while they performed work; (2) instructing Plaintiffs and the putative class members to not record more than forty hours of work per workweek; and (3) fraudulently editing Plaintiffs' and the putative class members' time records to reflect less than forty hours worked per workweek. These allegations are pleaded with a particularity that not only far exceeds the requirements of Fed. R. Civ. P. 8, but which exceed the bare bones pleadings that other district courts have held are insufficient in wage and hour cases.

Plaintiffs' Complaint states valid claims for relief against Defendant. Therefore, Defendant's Motion to Dismiss must be denied.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Procedural Background

On June 25, 2013, Plaintiffs filed their Collective and Class Action Complaint against Defendant, alleging that they were denied minimum wage and overtime pay under an illegal compensation policy that violated the FLSA, Wisconsin state law, and the Wisconsin Administrative Code. (dkt. # 1, "Complaint"). On July 23, 2013, Defendant filed a Motion to Dismiss the Complaint. (dkt. # 6). A Rule 16 conference is scheduled for August 14, 2013.

### II. Factual Background

The detailed factual allegations contained in the Complaint, which are conspicuously omitted from Defendant's Brief in Support of its Motion to Dismiss,

---

[1] In the alternative, if the Court finds that Plaintiffs' Complaint is insufficient, Plaintiffs' request that the Court permit Plaintiffs to file the Amended Complaint attached to the Declaration of David Zoeller ("Zoeller Decl.") as Exhibit A.

2

are summarized below.

Plaintiffs and others similarly situated, including members of the Wisconsin Unpaid Wage Class, were employed by Defendant as Front Line Sales Representatives, In-House Sales Representatives, and/or Discovery Sales Representatives (collectively, "Sales Representatives"), during the relevant statutory periods. (Complaint ¶ 10). The primary job duty of Sales Representatives is to sell Defendant's timeshare properties and/or promotional packages for timeshare properties. (*Id.* ¶ 11). Defendant classified its Sales Representatives as non-exempt employees for purposes of the FLSA, Wisconsin state law, and the Wisconsin Administrative Code, and paid its Sales Representatives on an hourly and commission basis. (*Id.* ¶ 12, 13).

Despite classifying its Sales Representatives as non-exempt, Defendant willfully engaged in an unlawful policy that deprived Sales Representatives of proper minimum wage and overtime compensation. (*Id.* ¶ 17, 21). This unlawful policy included Defendant requiring its Sales Representatives to clock out of its time-keeping system and then suffering and permitting them to perform "off the clock" work. (*Id.* ¶ 18). For example, Defendant required:

- Front Line Sales Representatives to clock out of its time-keeping system any time they were not giving tours to potential buyers, while still requiring them to remain on its premises in a designated area, but not paying them until it was their turn in the rotation to give another tour (referred to as the "power line" or "wheel"). (*Id.* ¶ 18.a).

- Discovery Sales Representatives to clock out of its time-keeping system any time they were not meeting with potential buyers in its sales office, while still requiring them to remain on its premises in a

3

designated area, but not allowing them to clock-in until tour groups returned to the sales office. (*Id.* ¶ 18.b).

- In-House Sales Representatives to clock out of its time-keeping system after giving initial tours to existing customers, which began in the morning and lasted until approximately midday, and then hold "back-end" meetings with potential buyers later that same day. During the back-end meetings, In-House Sales Representatives met with potential buyers a second time to close the sale, but they were not allowed to clock-in for the meetings. (*Id.* ¶ 18.c).

Further, Defendant instructed Sales Representatives that they could not be clocked in to its timekeeping system for more than forty hours per workweek and, based on information and belief, Defendant's management-level employees edited Sales Representatives' time entries to reflect less than forty hours worked per workweek. (*Id.* ¶ 18.d). Despite this conduct, Defendant routinely suffered and permitted Sales Representatives to work in excess of forty hours per workweek without proper minimum wage and overtime compensation for all hours worked. (*Id.* ¶ 20).

Defendant's daily records of the hours worked by Sales Representatives will show gaps in time throughout the work day, evidencing times at which Sales Representatives were performing off-the-clock work. (*Id.* ¶ 20.a). Similar evidence will be found by comparing Defendant's daily records of the hours worked by In-House Sales Representatives with Defendant's records relating to the time and date of back-end meetings. (*Id.* ¶ 20.b). In addition, a comparison between Defendant's records of completed sales transactions, which contain the names of the Sales Representative completing the sale along with the date and time the sale was completed, and daily records of the hours worked by Sales Representatives will

evidence that Sales Representatives clocked out prior to the time that the sales were completed. (*Id.* ¶ 20.c).

## ISSUE PRESENTED

Have Plaintiffs sufficiently pleaded minimum wage and overtime claims against Defendant for violations of the FLSA and Wisconsin state law?

## LEGAL STANDARD

To avoid dismissal under Rule 12(b)(6) for failure to state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Nicholson v. UTI Worldwide*, No. 3:09-cv-722-JPG-DGW, 2010 WL 551551, at *4 (S.D. Ill. Feb. 12, 2010) (*See* Ex. C to Zoeller Decl., quoting Fed. R. Civ. P. 8(a)(2) and holding that "no rule" requires plaintiffs to plead their hourly rate, unpaid hours worked, or dates worked off the clock in FLSA cases). To satisfy this standard, it is not necessary to plead "detailed factual allegations;" all that is required is that the complaint contain sufficient factual content that, when accepted as true, "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* All reasonable inferences drawn from the factual content is viewed in the light most favorable to the plaintiff. *Lee v. City of Chicago,* 330 F.3d 456, 459 (7th Cir. 2003).

Determining whether a complaint has sufficiently stated a claim is a

"context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679. While pleading standards have changed after the *Iqbal* decision, within the Seventh Circuit, it remains true that a pleading need only be detailed enough to give defendant fair notice of the claim and to show that the claims are plausible. *Nicholson*, 2010 WL 551551, at *4 (*citing Tamayo v. Blagojevich,* 526 F.3d 1074, 1083 (7th Cir. 2008)).

## ARGUMENT

### I. Plaintiffs Sufficiently Stated Minimum Wage and Overtime Claims Against Defendant.

The facts alleged in Plaintiffs' Complaint, when accepted as true, go well beyond what is required by Fed. R. Civ. P. 8 to state valid and plausible minimum wage and overtime claims against Defendant. Although Defendant attempts to argue to the contrary, its argument is advanced only by conspicuously ignoring the majority of the facts contained in the Plaintiffs' well-pleaded Complaint. As such, Defendants motion must be rejected in its entirety so that this matter may proceed without further delay or prejudice to the Plaintiffs and putative class members.[2]

#### A. Federal and State Law Applicable to Plaintiffs' Claims.

Plaintiffs' minimum wage and overtime claims are brought under the FLSA and Wisconsin state law. The FLSA requires covered employers, like Defendant, to compensate non-exempt employees, like Plaintiffs, with minimum wages for all hours worked and at a rate of not less than one and one-half times the regular rate

---

[2] Because this matter is pursued as a collective action under 29 U.S.C. § 216(b), the statute of limitations is not tolled for putative collective class members until their consents are filed with the Court. Those class members who are currently unaware of the suit but who may later receive Notice of the suit are prejudiced by any delay in receiving Notice.

6

of pay for all hours worked in excess of forty hours per workweek. *See* 29 U.S.C. §§ 206, 207. Likewise, Wisconsin state law requires covered employers to compensate non-exempt employees with minimum wages for all hours worked and overtime pay at a rate of one and one-half times the regular rate of pay for all hours worked in excess of forty hours. Wis. Stat. §§ 103.03, 104.03; Wis. Admin. §§ 272.03, 274.03.

### B. Plaintiffs' Complaint States Valid Minimum Wage and Overtime Claims Against Defendant.

Plaintiffs' Complaint contains substantial and detailed factual allegations to establish Plaintiffs' minimum wage and overtime claims against Defendant. Those allegations include the following:

> 17. Specifically, Defendant required Sales Representatives to clock out of Defendant's time-keeping system and to continue performing work. Defendant's policy of suffering and permitting Sales Representatives to work without compensation includes, but is not limited to the following examples:
>
> > a. Defendant required Front Line Sales Representatives to clock out of Defendant's time-keeping system any time they were not giving tours to potential buyers. During these times between tours, Defendant required Front-Line Sales Representatives to remain on Defendant's premises in a designated waiting area, but did not pay them until it was their turn to give a tour in a rotation, referred to as the "power line" or "wheel."
>
> > b. Defendant required Discovery Sales Representatives to clock out of Defendant's timekeeping system any time they were not meeting with potential buyers in Defendant's sales office. During these non-sales meeting times, Defendant required Discovery Sales Representatives to remain on Defendant's premises in a designated area. Defendant did not allow Discovery Sales Representatives to clock into Defendant's timekeeping system until tour groups returned to Defendant's sales office.

c. Defendant required In-House Sales Representatives to clock out of Defendant's timekeeping system after they completed their initial tours at the beginning of each day. After the initial tours, which were given to existing timeshare owners at set times, typically starting in the morning and lasting until approximately mid-day, Defendant required In-House Sales Representatives to set up "back-end" meetings with potential buyers later in the same day. During back-end meetings, In-House Sales Representatives met with potential buyers a second time, typically with another employee who Defendant called a "closer," to complete the sale. Defendant did not allow In-House Sales Representatives to clock in to Defendant's timekeeping system for back-end meetings.

d. Defendant instructed Sales Representatives that they could not be clocked into Defendant's timekeeping system for more than forty (40) hours per week. On information and belief, Defendant's management-level employees edited Sales Representatives' time entries to reduce the number of hours they worked per week.

18. Defendant was aware, or should have been aware, that Plaintiffs and similarly situated Sales Representatives performed work that required payment of minimum wages and overtime compensation for all of their hours worked.

19. Defendant routinely suffered and permitted Plaintiffs and similarly situated Sales Representatives to work long hours and did not pay them at least the minimum wage and overtime compensation for all hours worked. Evidence of Defendant's knowledge of this uncompensated work includes, but is not limited to, the following examples:

a. Defendant's daily records of Sales Representatives' hours worked. These records will show gaps in time throughout the work day. These gaps are indicative of the times Plaintiffs and similarly situated Sales Representatives were performing work but were required to clock out of Defendant's timekeeping system.

b. Defendant's records of the date and time that back-end meetings occurred, and which Sales Representatives worked the meeting. A comparison of these records with Defendant's daily records of Sales Representatives' hours worked will

8

indicate that Plaintiff Bitner and other similarly situated Sales Representatives clocked out of Defendant's timekeeping system after their last scheduled tour of the day and were not paid for work performed in back-end meetings.

c. Defendant's records of completed sales transactions, which contain the name of the Sales Representative and the date and time that the sale was closed in Defendant's system. Because Defendant required Sales Representatives to stay with buyers until transactions were closed, a comparison of these records with Defendant's daily records of Sales Representatives' hours worked will show that Sales Representatives clocked out prior to the time that sales transactions were completed.

d. Defendant's management-level employees reviewed Sales Representatives' time records and were often present when Sales Representatives arrived to the office in the morning and left the office in the evening. These management-level employees thus knew or should have known that Sales Representatives were performing work without compensation.

This conduct, as alleged, in and of itself constitutes violations of the FLSA and Wisconsin state law. Therefore, Plaintiffs have stated valid claims for relief against Defendant. *Cf., e.g., Solis v. El Tequila, LLC*, No. 12-cv-588-JED-PJC, 2013 WL 3771413, at *2 (N.D. Okla. July 17, 2013) (*See* Ex. C to Zoeller Decl., holding that minimum wage and overtime claims are capable of being pleaded without reference to a large body of facts especially when the conduct alleged in and of itself violates the FLSA).

In addition, as illustrated above, the Complaint details when and how Plaintiffs were required to perform off-the-clock work without proper minimum wage and overtime compensation. (*Id.* ¶¶ 18.a - 18.d). For example, Front Line Sales Representatives were required to clock out when not giving tours and were

required to stay on Defendant's premises without compensation until it was their turn to give another tour. (*Id.* ¶ 18.a). Similarly, Discovery Sales Representatives were required to clock out when not meeting with potential buyers and were required to stay on Defendant's premises and not allowed to clock in until the buyers returned to the sales office. (*Id.* ¶ 18.b). Lastly, In-House Sales Representatives were required to clock out after giving initial tours to existing customers each morning, but were not allowed to clock in during back-end sales meetings with the customers. (*Id.* ¶ 18.c). Defendant entirely ignores these very specific factual allegations in its motion.

Defendant primarily relies on *White v. Classic Dining Acquisition Corp.* (*see* Ex. B to Zoeller Decl.), a decision characterizing the complaint at issue as the "epitome of formulaic recitations." No. 1:11-cv-712-JMS-MJD, 2012 WL 1252589, at *4 (S.D. Ind. Apr. 13, 2012)[3]. In *White,* the plaintiff failed to allege basic elements of an FLSA claim, including that the defendants "have sales that reach the [$500,000.00] statutory threshold." *Id.* The plaintiff also failed to allege "when [and how] she and others were allegedly shorted [minimum wages]." *Id.* at *5-*6. A review of that complaint reveals that the only factual allegation made by the Plaintiff, in a class and collective action complaint, was that: "White, when adding her tips to the wages Classic Dining pays, does not make the federal statutory minimum wage." (Zoeller Decl. ¶ 2). Aside from the fact that both complaints contain allegations of FLSA violations, the allegations in Plaintiffs' Complaint bear no resemblance to the "formulaic recitations" in *White*.

---

[3] Notably, no court has subsequently cited the *White* decision.

10

Indeed, unlike the plaintiff in *White*, Plaintiffs' Complaint contains detailed factual allegations regarding Defendant's conduct that they allege violated the FLSA and Wisconsin minimum wage and overtime law. As detailed above, the Complaint identifies when and/or how: (1) Plaintiffs worked off-the-clock without minimum wage and overtime compensation; (2) Defendant fraudulently altered Plaintiffs' time records to reflect less than forty hours worked per workweek; (3) Defendant instructed Plaintiffs to not record more than forty hours worked in a workweek; (4) Defendant suffered and permitted Plaintiffs to work in excess of forty hours per workweek; and (5) Defendant failed to compensate Plaintiffs with minimum wage and overtime pay. In sum, *White* has no bearing on this case.

Defendant also relies on *Bailey v. Border Foods, Inc.*, No. 09-1230, 2009 WL 3248305 (D. Minn. Oct. 6, 2009) for the proposition that plaintiffs must plead their hourly rates of pay and approximate number of hours worked without proper compensation. (*See* Ex. C to Zoeller Decl.). Again, Defendant's reliance is misplaced. First, neither the FLSA nor Wisconsin state law require Plaintiffs to plead their rate of pay and the wages due to support a minimum wage or overtime claim. *See Nicholson*, 2010 WL 551551, at *4 (holding that "no rule" requires plaintiffs to plead their hourly rate, unpaid hours worked, or dates worked off the clock). Second, as stated in the Complaint, the records establishing the actual uncompensated hours worked are in Defendant's exclusive possession, and it would be unfair to require Plaintiffs to make such a pleading at this early stage of the litigation without the benefit of discovery. (*See* Complaint ¶ 20). Third, several courts have rejected

11

adopting such a pleading requirement in the context of FLSA cases. *See Nicholson*, 2010 WL 551551; *McDonald v. Kellogg Co.*, No 08–2473–JWL, 2009 WL 1125830 (D. Kan. Apr. 27, 2009); *Secretary of Labor v. Labbe*, 319 Fed. App'x 761 (11th Cir. 2008); *Xavier v. Belfor USA Group., Inc.*, 2009 WL 411559 (E.D. La. Feb. 13, 2009); *Puleo v. SMG Prop. Mgmt. Inc.*, No. 6:08–cv–86–Orl–22DAB, 2008 WL 3889727 (M.D. Fla. Aug. 20, 2008); *Uribe v. Mainland Nursery, Inc.*, No. 2–07–0229–FCD–DAD, 2007 WL 4356609 (E.D. Cal. Dec. 11, 2007).[4]

Further, courts have found less-detailed factual allegations than those presented here to be sufficient to state valid minimum wage and overtime claims. *See Sanchez v. Holtz Construction, Inc.,* No. 09-C-7531, 2012 WL 13514, at *3 (N.D. Ill. Jan. 4, 2012) (*See* Ex. C to Zoeller Decl., "Plaintiffs allege that they routinely worked more than 40 hours per week without receiving overtime pay, and that the amount of compensation they did receive for the work they performed fell below the minimum-wage requirement. Plaintiffs do not need to provide more factual detail in order to state a claim that is plausible in the relevant sense.") (quotation and citation omitted); *see also McDonald v. Kellogg Co.,* No. 08-2473-JWL, 2009 WL 1125830, at *2 (D. Kan. Apr. 27, 2009). (*See* Ex. C to Zoeller Decl.).

Furthermore, it is noteworthy that Defendant does not assert (nor can it) that it has not been provided with fair notice of Plaintiffs' unpaid minimum wage and overtime claims in order to "begin to investigate and prepare a defense." *Tamayo,*

---

[4] While Plaintiffs contend that pleading an FLSA claim does not require them to state the amount of potential damages at issue in the pleading (pay rates and number of unpaid hours), attached as Ex. A to the Declaration of Attorney Zoeller is an Amended Complaint alleging those facts. Plaintiffs therefore request that, in the event the the Court finds that such a high degree of detail is required, that Plaintiffs be permitted to file their Amended Complaint.

12

526 F.3d at 1085. The lack of any such assertion is telling in so far as Defendant appears to implicitly acknowledge that it has adequate notice of Plaintiffs' claims, which begs the question of why Defendant filed its motion. A plausible answer is that Defendant benefits from any delay in the proceedings because the FLSA statute of limitations is running on putative collective class members. Regardless, Defendant's motion fails on the merits.

## CONCLUSION

At this early pleading stage, Plaintiffs' Complaint contains overwhelmingly sufficient factual allegations to establish valid minimum wage and overtime claims against Defendant. Therefore, Defendant's Motion to Dismiss must be denied in its entirety.

Dated this 13th day of August, 2013.

        **HAWKS QUINDEL, S.C.**
        *Attorneys for Plaintiffs*

        By: *David C. Zoeller*
        William E. Parsons, State Bar No. 1048594
        Email: wparsons@hq-law.com
        David C. Zoeller, State Bar No. 1052017
        Email: dzoeller@hq-law.com
        222 West Washington Avenue, Suite 450
        P.O. Box 2155
        Madison, Wisconsin 53701-2155
        Telephone: 608/257-0040
        Facsimile: 608/256-0236

        **NICHOLS KASTER, PLLP**

        Paul J. Lukas, MN Bar No. 22084X
        Tim C. Selander, MN Bar No. 0387016
        G. Tony Atwal, MN Bar No. 0331636*
        4600 IDS Center, 80 South 8th Street
        Minneapolis, MN  55402
        T: (612) 256-3200
        F: (612) 215-6870
        E: lukas@nka.com
           selander@nka.com
           tatwal@nka.com

        **pro hac vice application pending*