IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

**THOMAS BITNER** and
**TOSHIA PARKER,**
individually and on behalf
of those similarly situated,

                            Plaintiffs,              Case No:  13-CV-451-wmc

          vs.

**WYNDHAM VACATION RESORTS, INC.**

                            Defendant.

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION
FOR CONDITIONAL CERTIFICATION AND COURT-AUTHORIZED NOTICE**

## INTRODUCTION

Plaintiffs bring this action on behalf of themselves and all other similarly situated current and former In-House Sales Representatives and Front Line Sales Representatives employed by Wyndham Vacation Resorts, Inc. ("Wyndham") in Wisconsin within the last three years.  With this lawsuit, Plaintiffs seek to recover minimum wages and overtime pay owed to In-House Sales Representatives and Discovery Sales Representatives by Wyndham as a result of its violations of the Fair Labor Standards Act ("FLSA") and Wisconsin wage and hour laws.  These Sales Representatives performed the same primary job duty of selling Wyndham's timeshare properties and/or promotional packages, and they all worked at its locations in the Wisconsin Dells area.  Most importantly, the evidence before the

1

Court at this early stage of the litigation shows that Wyndham has a common policy of failing to pay its In-House Sales Representatives and Discovery Sales Representatives for all of their hours worked in violation of federal and state law, resulting in unpaid minimum wages and overtime pay.  Plaintiffs have, therefore, established that Wyndham's Sales Representatives are sufficiently similarly situated such that conditional class certification, including Court-authorized notice, is appropriate. For these reasons and those explained further below, Plaintiffs respectfully request that the Court grant their motion.

## RELEVANT PROCEDURAL HISTORY

Plaintiffs Bitner and Parker filed this action on June 25, 2013 on behalf of themselves and those similarly situated under the Fair Labor Standards Act (FLSA) and under Wisconsin state law. (Complaint, dkt. #1). Wyndham has not answered. Instead, on July 23, 2013, Wyndham filed a motion to dismiss Plaintiffs' Complaint. (Motion to Dismiss, dkt. #6). Plaintiffs opposed Defendant's motion on August 13, 2013, (Brief in Opposition of Motion to Dismiss, dkt. #14), and Defendant filed its reply on August 23, 2013 (Reply Brief in Support of Motion to Dismiss, dkt. #19). On November 1, 2013, the Court denied Defendant's Motion to Dismiss. (Dkt. #31). The Court also granted Plaintiffs leave to file their First Amended Complaint, which was filed today. (Dkt. #32).

Since Plaintiffs filed their Complaint, three additional Sales Representatives have opted-in to this action. (Dkt. ##9, 11, 24).  Immediately prior to filing this motion, the Plaintiffs have filed a Motion for Leave to File a Second Amended

Complaint. (Dkt. #33). For purposes of their Motion for Conditional Class
Certification, the Plaintiffs use the allegations as set forth in the Second Amended
Complaint. Specifically, the Plaintiffs' original Class Action Complaint (dkt. #1)
included class allegations for "Front Line Sales Representatives." These same class
allegations for Front Line Sales Representatives are not included in the Plaintiffs'
Second Amended Complaint and the original class of "Sales Representatives" has
been divided into classes of "In-House Sales Representatives" and "Discovery Sales
Representatives." (Amended Collective and Class Action Complaint ¶ 20, dkt.
#33.1).

**RELEVANT FACTS**

Wyndham is a Florida corporation in the business of developing, marketing,
and selling timeshares.  (Am. Compl. ¶ 4).  Wyndham operates three resorts in
Wisconsin: two in Wisconsin Dells and one in Baraboo.  *Wyndham Vacation Resorts*
*Search by Location*, https://www.wyndhamvacationresorts.com/ffr/resort/search.do.
Wyndham employs Front Line Sales Representatives, In-House Sales
Representatives, and Discovery Sales Representatives ("Sales Representatives") at
these locations to sell timeshare properties and promotional packages.  (Am. Compl.
¶ 10-11).

Although all Sales Representatives share the same primary job duty of
selling Wyndham's timeshare properties and promotional packages and do so from
the same location, their involvement in the sales process differs.

In-House Sales Representatives give tours to existing timeshare owners each

3

morning and set up "back-end meetings" that occur later the same day. (Declaration of Thomas Bitner ("Bitner Dec."), dkt. #39, ¶ 5; Declaration of Abraham Haupt ("Haupt Dec."), dkt. #41, ¶ 4). At back-end meetings, In-House Sales Representatives sometimes work with another Wyndham employee called a "closer" to sell Wyndham's properties and packages. (Bitner Dec. ¶6; Haupt Dec. ¶5). Discovery Sales Representatives make sales to potential buyers in the Wyndham sales office during sales meetings, which occur after potential buyers return from sales tours with the Front Line or In-House Sales Representatives. (Declaration of Toshia Parker ("Parker Dec."), dkt. #40, ¶4).

Wyndham classifies all Sales Representatives as non-exempt from overtime and minimum wages and pays them a recoverable hourly draw plus commissions on their sales. (Am. Compl. ¶¶12-13; Bitner Dec. ¶7; Parker Dec. ¶5; Haupt Decl. ¶6). When Sales Representatives earn a commission, the hourly draw previously paid out is recovered from that commission. (See, e.g., Declaration of David C. Zoeller in Support of Motion for Conditional Certification ("Zoeller Dec."), dkt. #38, Ex. 1, WVR000616, Bitner's pay record from June 24, 2010). Plaintiffs allege that Wyndham routinely failed to pay In-House Sales Representatives and Discovery Sales Representatives for all of their hours worked, including minimum wage and overtime pay. (See Am. Compl.; Bitner Dec. ¶7-9; Parker Dec. ¶6-8; Haupt Dec. ¶6-8).

### A. In-House Sales Representatives Are Not Compensated For All Time Spent Performing Work

Wyndham permits its In-House Sales Representatives to be on the

clock for time they spend giving sales tours to existing timeshare owners each morning. (Bitner Dec. ¶4; Haupt Dec. ¶5). However, Wyndham does not permit its In-House Sales Representatives to remain on the clock for numerous job duties performed outside of giving these tours.

In-House Sales Representatives give tours to existing Wyndham owners in the morning, and then set up back-end meetings to try and sell the owner new products. (Haupt Dec.¶5; dkt. #27, Transcript of Deposition of Thomas (Bitner Depo.) at 96:19-25; dkt. #29, Transcript of Deposition of Abraham Haupt (Haupt Depo.) at 69:20-25; 70:1-2). In addition to attending back-end sales meetings off the clock, In-House Sales Representatives made and received phone calls to resolve customer service issues (Bitner Depo. 203:3-7; Haupt Depo at 76:18-22.), attended breakfasts with customers (Bitner Depo. 188:14-20), and attended meetings and trainings while they were not clocked in. (Bitner Depo. 196:11-18; 104:6-16; Bitner Dec. ¶6; Haupt Dec. ¶5). In-House Sales Representatives also worked on "party weekends", during which Wyndham holds special events for potential new customers. In-House Sales Representatives are present during the party weekends to assist potential customers and try to sell Wyndham products. (Bitner Depo. 105:15-107:5: Haupt Depo. 131:21-25). On these weekends, In-House Sales Representatives did not clock in to Defendant's time clock. (Bitner Depo. 106:17-24).

In-House Sales representatives clocked in upon arrival in the morning prior to starting their tour waves. (Bitner Depo. 161:22-162:10). After completing the morning tours, In-House Sales Representatives clocked out and remained clocked

out for the rest of the day. (Bitner Depo. 164:19-25; Haupt Depo. 68:22-25; 69:1-19; Haupt Dec.¶5). They did this at the direction of their managers. (Bitner Depo. 262:22-263:7; Haupt Depo. 98:2-22). The time records of named plaintiff Bitner and opt-in Haupt, both In-House Sales Representatives, demonstrate that they commonly clocked out in the early afternoon (Zoeller Dec. Ex. 2, WVR002451-53, time records for Haupt; Zoeller Dec. Ex. 3, WVR000891-93, time records for Bitner). Managers told In-House Sales Representatives that they were not permitted to be clocked in for more than 40 hours during the week due to Wyndham's overtime policy. (Bitner Depo. 73:4-18; dkt. #42, Declaration of Thomas Delmore at ¶6). However, Bitner and Haupt testified that they frequently worked significantly more than 40 hours per week. (Bitner Depo. 175:9-12, "If I was going to be as accurate as possible, I would say fifty"; Haupt Depo. 143:7-10). In-House Sales Representatives were required to arrive by 8:00 a.m. for the morning meeting. (Bitner Depo. 152:22-24). In-House Sales Representatives could work as late as 7:00 p.m. (Bitner Depo. 156:13-14), but they were only punched in until around 11:00 a.m. or 12:00 p.m. (Bitner Depo. 163:6-12). As a result, In-House Sales Representatives performed work for which they were not compensated.

## B. Discovery Sales Representatives Are Not Compensated For All Time Spent Performing Work.

Discovery Sales Representatives meet with customers in the sales office after they return from sales tours with Front Line Sales Representatives. (Parker Dec. ¶4; Parker Depo. 170:1-19). Their role is to sell timeshare properties and promotional packages. (Parker Dec. ¶3). Discovery Sales Representatives arrived

between 9:00 and 10:00 a.m. each morning (Parker Depo. 182:20-22) and had to stay until all other Sales Representatives had completed their tours and meetings. (Parker Depo. 120:6-13 "[O]ne of us always had to be there until the last in-house person was done").

Discovery Sales Representatives were told by managers that they were not permitted to be on the clock for more than 40 hours per week regardless of the actual hours spent performing work. (Parker Dec. ¶¶7-8; Parker Depo. 102:23-103:3; 196:5-9). However, Parker testified that she commonly worked closer to 60 hours per week during the busy season, which included the summer months, spring break, and other holidays. (Parker Depo. 98:25-99:4, "We were working from 9:00 in the morning until 10:00 at night;" 112:5-13; 116:8-19; 160:11-16, stating she ranged from 60 to 72 hours per week during the busy summer season). Discovery Sales Representatives were required to clock out for a thirty minute lunch break each day, though Parker testified that she typically did not take lunch during these breaks. (Parker Depo. 148:14-149:18). Throughout the day, Discovery Sales Representatives were not permitted to leave the premises. (Id. at 242:24-243:12).

Parker's Earnings Statements do not show her working over 40 hours, even during the busy seasons when she testified it was common for her to work between 60 and 70 hours. (Parker Dep. 68:3-23; 112:5-13; Zoeller Dec. Ex. 4, WVR000682-685).

## C. Wyndham Managers Were Aware that Sales Representatives Performed Work For Over 40 Hours Per Week

Wyndham's managers were aware that Sales Representatives performed

7

work for more than 40 hours per week, though their punch clock records rarely exceeded 40. In-House Sales Representatives were told by managers to clock out after completing their morning tours, but continued to perform work in the presence of their managers. (Bitner Depo. 262:22-263:7, "They [the manager] would say real quick "Go punch out," before you started your back end;" 293:23-294:4; Bitner Dec. ¶10; Haupt Dec. ¶8; Haupt Depo. 98; Delmore Dec. ¶6). In-House Managers instructed the In-House Sales Representative not to clock more than 40 hours at the direction of their superiors at Wyndham. (Delmore Dec. ¶6). In-House Managers were aware that In-House Sales Representatives were working hours over 40 a weeks but were being compensated overtime wages because they had to work off the clock. (Delmore Dec. ¶7). While on the sales floor between tours, In-House Sales Representatives worked alongside the managers who instructed them to clock out after meeting with customers. (Bitner Dec. ¶8; Haupt Dec. ¶7). Sales Representatives spent the time between tours calling potential customers, responding to customer needs, and participating in meetings and training. (Id.; Haupt 76:18-25: 77:1-11). The time records produced by Wyndham show that In-House Sales Representatives commonly clocked out in the early afternoon. For example, Plaintiff Bitner's time records for June and July 2010 show that he was typically clocked in for only a few hours in the morning. (Zoeller Dec. Ex. 3). However, Bitner estimated that he worked about fifty hours per week. (Bitner Depo. 175:8-12; see also Zoeller Dec. Ex. 2, showing Haupt's time records for October and November 2011). This off-the-clock work was done at the express direction of

managers. (Delmore Dec. ¶6).

Managers instructed Discovery Sales Representatives that they were not permitted to be on the clock for more than 40 hours per week, yet the working hours testified to by Parker go well beyond 40. (Parker Depo. 116:14-19). Parker testified to working between 60 and 70 hours during the busy season. (Id). But Parker's pay stubs show that during her time with Wyndham, she was never clocked in for more than 40 hours. (Zoeller Dec. Ex. 4). Parker performed this off-the-clock work in the presence of her managers. (Parker Dec. ¶7; Parker Depo. 257:7-14, "[T]hey see me showing tours or making sales"). In addition, Parker discussed her long working hours with Jeff Goree, her manager during the summer of 2011. (Parker Depo. 98:9-17). Parker told Goree that she was working twelve hour days without being clocked in despite Wyndham's policies regarding correct reporting of hours and overtime. (Parker Depo. 102:12-103:3; 105:8-14, "I spoke with him about…keeping time, about working overtime, about having to work the extra hours"). Wyndham's managers were aware of the off-the-clock work performed by the Sales Representatives, and in fact expressly directed them to perform that work.

## ARGUMENT

## I.  THE PURPOSE OF FLSA CONDITIONAL CERTIFICATION AND JUDICIAL NOTICE

Plaintiffs ask the Court to conditionally certify this case as a collective action for the purpose of discovery and to approve the form, content, and plan of Plaintiffs' proposed notice to the putative opt-in Plaintiffs, all Wyndham employees who worked as In-House or Discovery Sales Representatives in Wisconsin within three

years of the date Plaintiffs filed this action.

It is undisputed that the FLSA permits employees to pursue their claims collectively. 29 U.S.C. § 216(b) ("[a]n action … may be maintained against an employer … in any Federal or State court of competent jurisdiction by any one or more employees for and on behalf of themselves or other employees similarly situated"). The United States Supreme Court has affirmed district courts' discretion to facilitate notice of collective actions, explaining that the "pooling of resources" inherent in a collective action allows employees to vindicate their rights by reducing the cost of litigation while simultaneously benefiting the judicial system "by efficient resolution in one proceeding of common issues of law and fact arising from the same . . . alleged activity." Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165, 169-70 (1989).

Three important features define an FLSA collective action and differentiate it from a Rule 23 class action. First, in order to participate in a collective action, an employee must "opt in," meaning the employee must consent in writing to join the lawsuit and that consent must be filed with the court. 29 U.S.C. § 216(b); Hoffmann-La Roche, 493 U.S. at 168; Ervin v. OS Rest. Servs., Inc., 632 F.3d 971, 976 (7th Cir. 2011). This requirement stands in stark contrast to Rule 23 class actions, which, if certified, automatically include all class members unless they specifically opt-out. Ervin, 632 F.3d at 976.

Second, the statute of limitations continues to run on each employee's claim until he or she files their written consent to join with the court. Smallwood v. Ill.

10

Bell Tel. Co., 710 F. Supp. 2d 746, 753 (N.D. Ill. 2010) (citing Fisher v. Mich. Bell
Tel. Co., 665 F. Supp. 2d 819, 828-29 (E.D. Mich. 2009) ("Unlike class actions under
Rule 23, conditional certification of a collective action under § 216(b) of the FLSA
does not toll the statute of limitations for potential plaintiffs")). Judicial notice at an
early stage in the case thus promotes the remedial purpose of Section 216(b) by
preventing the erosion of claims due to the FLSA's statute of limitations.  See
Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 262 (S.D.N.Y. 1997) (citing cases and
explaining that district courts endorse early notice in FLSA collective actions to
facilitate the Act's "broad remedial purpose" and to "promote efficient case
management").

      Finally, to serve the "broad remedial purpose" of the FLSA, courts commonly
order notice to potentially similarly-situated employees to inform them of this
opportunity to "opt into" the case. Hoffmann-La Roche, 493 U.S. at 172-73. Indeed,
without court-authorized notice, potential plaintiffs would likely be unaware of the
action, their right to join, or the statute of limitations.  As a result, "a
representative plaintiff must be able to inform other individuals who may have
similar claims that they may join the suit." Austin v. CUNA Mut. Ins. Soc'y, 232
F.R.D. 601, 605 (W.D. Wis. 2006).

      In light of these three important features, court-authorized notice is the
preferred method of managing the notification process for several reasons: it avoids
multiplicity of duplicative suits, it allows the court to set deadlines to advance the
dispositions of an action, and it protects plaintiffs' claims from expiring under the

statute of limitations. <u>Hoffmann-La Roche</u>, 493 U.S. at 171-73.

## II.   THE "FAIRLY LENIENT" STANDARD FOR CONDITIONAL CLASS CERTIFICATION

The Western District of Wisconsin evaluates motions for FLSA conditional certification using a two-step process. <u>Fosbinder-Bittorf v. SSM Health Care of Wis., Inc.</u>, No. 11-CV-592-WMC, 2013 WL 3287634, at *3 (W.D. Wis. Mar. 21, 2013) (citing cases); <u>Berndt v. Cleary Bldg. Corp.</u>, No. 11-CV-791-WMC, 2013 WL 3287599, at *6 (W.D. Wis. Jan. 25, 2013) (same).  In the first step (or stage), "the plaintiff need only make "a modest factual showing" that she and potential class members were 'victims of a common policy or plan that violated the law.'" <u>Fosbinder-Bittorf</u>, 2013 WL 3287634, at *3 (quoting <u>Kelly v. Bluegreen Corp.</u>, 256 F.R.D. 626, 628-29) (W.D. Wis. 2009)); <u>Berndt</u>, 2013 WL 3287599, at *6 (same).  Put differently, "the plaintiff must offer modest proof of some factual nexus connecting her to other potential plaintiffs as victims of an unlawful practice."  <u>Fosbinder-Bittorf</u>, 2013 WL 3287634, at *3 (internal quotations omitted); <u>Berndt</u>, 2013 WL 3287599, at *6 (same).

The standard is "fairly lenient [ ]; it does not involve adjudicating the merits of the claims [ ]; nor does it entail the kind of rigorous analysis typical of class certification under Fed. R. Civ. P. 23."  <u>Fosbinder-Bittorf</u>, 2013 WL 3287634, at *4 (internal quotations and citations omitted); <u>Berndt</u>, 2013 WL 3287599, at *7 (same). A lenient standard is appropriate due to the fact that notice simply permits potential plaintiffs to determine whether they want to join the action and because the statute of limitations continues to run until they file their written consent with

12

the court.  <u>Fosbinder-Bittorf</u>, 2013 WL 3287634, at *4 (citations omitted); <u>Berndt</u>, 2013 WL 3287599, at *7 (same).  Importantly, the focus of the Court's inquiry at the first stage is "not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are similarly situated . . . with respect to their allegations that the law has been violated."  <u>Brabazon v. Aurora Health Care, Inc.</u>, No. 10-CV-714, 2011 WL 1131097, at *3 (E.D. Wis. Mar. 28, 2011) (quoting <u>Young v. Cooper Cameron Corp.</u>, 229 F.R.D. 50, 54 (S.D.N.Y. 2005)); <u>Jimenez v. GLK Foods LLC,</u> No. 12-C-0209, 2013 WL 3936928, at *3 (E.D. Wis. July 30, 2013) (quoting <u>Brabazon</u>, 2011 WL 1131097, at *3); <u>see also</u> <u>Zaniewski v. PRRC Inc.</u>, 848 F. Supp. 2d 213, 229 (D. Conn. 2012) ("Plaintiffs need only demonstrate that they and potential opt-in plaintiffs "are similarly situated with respect to the FLSA violations they allege"") (quoting <u>Winfield v. Citibank, N.A.</u>, 843 F. Supp. 2d 397, 404 (S.D.N.Y. 2012)).

Although this Court considers affidavits from both parties, the "[c]onditional certification analysis does not require the court to make any findings of fact with respect to contradictory evidence presented by the parties nor does the court need to make any credibility determinations with respect to the evidence presented." <u>Berndt</u>, 2013 WL 3287599, at *7 (internal quotations and citations omitted).  As a result, any conflict between the parties' affidavits is resolved, at least for purposes of conditional certification, in the plaintiffs' favor.  <u>Id</u>. (citing <u>Larsen v. Clearchoice Mobility, Inc.</u>, No. 11 C 1701, 2011 WL 3047484, at *1 (N.D. Ill. Jul. 25, 2011)).

Conditional certification is warranted in this case because the evidence

submitted by Plaintiffs exceeds what is required under the first-stage analysis and because court-supervised notice will serve the remedial purpose of the FLSA.

## III.   PLAINTIFFS ARE SIMILARLY SITUATED TO THE PUTATIVE OPT-IN PLAINTIFFS

District courts, including this one, commonly conditionally certify FLSA cases involving employees who allege that they were not paid for all of their hours worked.  See, e.g., Freeman v. Total Sec. Mgmt.-Wisconsin, LLC, No. 12-CV-461-WMC, 2013 WL 4049542 (W.D. Wis. Aug. 9, 2013) (conditionally certifying case involving allegations that employees were not paid for training time and pre- and post-shift work); Fosbinder-Bittorf, 2013 WL 3287634 (conditionally certifying case involving allegations that the employer's policy of automatically deducting 30 minutes for meal breaks resulted in unpaid minimum and overtime wages); Berndt, 2013 WL 3287599 (conditionally certifying case involving claims that employees were not compensated for attendance at mandatory morning meetings, pre- and post-shift work, and travel time); Brabazon v. Aurora Health Care, Inc., No. 10-CV-714, 2011 WL 1131097 (E.D. Wis. Mar. 28, 2011) (conditionally certifying case involving claims that employees were not compensated for on-duty meal periods); DeKeyser v. Thyssenkrupp Waupaca, Inc., No. 08-C-488, 2008 WL 5263750 (E.D. Wis. Dec. 18, 2008) (conditionally certifying case involving claims that factory workers were not paid for time spent donning and doffing gear and equipment, showering, and walking to and from the production floor); Sjoblom v. Charter Commc'ns, LLC, 571 F. Supp. 2d 961 (W.D. Wis. 2008) (conditionally certifying case involving claims that employees performed unpaid work on company vehicles,

14

among other post-shift activities). Here, similar to these cases, the Plaintiffs have brought forth sufficient evidence that they and the similarly situated collective class members were subject to a common illegal pay policy which required them to work off-the-clock without compensation.

### A. Plaintiffs were all subject to Wyndham's common policies and practice of requiring In-House and Discovery Sales Representatives to perform work off the clock.

In addition to the allegations in their Complaint, Plaintiffs' motion is supported by declarations from the two named Plaintiffs and one opt-in Plaintiff, as well as deposition testimony from these same individuals, all of whom worked for Wyndham at the same location in Wisconsin within the last three years. Their testimony is also supported by an In-House Manager, Thomas Delmore, who confirms the illegal off the clock pay practice.

Thomas Bitner and Abraham Haupt both worked as In-House Sales Representatives for Wyndham during the past three years. Both Bitner and Haupt testify that they were required to clock out of Defendant's time clock after completing their morning tours, but that they continued to perform work in the afternoon, attending back-end sales meetings, making and receiving follow-up calls from customers, and attending weekend events, meetings, and trainings. (Bitner Depo. 104:4-106:24; Bitner Dec. ¶6; Haupt Dec. ¶5). The time records for Bitner and Haupt produced by Wyndham support this claim; they show that Bitner and Haupt commonly clocked out in the early afternoon each day. (Bitner Depo. 162:11-16, stating he stayed punched in until about 11:00; Zoeller Dec. Ex. 2, 3). Bitner and

15

Haupt were paid hourly and commission, as were all Wyndham sales representatives. (Bitner Dec. ¶ 7; Haupt Dec. ¶ 6; Zoeller Dec. Ex. 6, WVR000541, "Total compensation includes not only base salary or hourly wage, but may also include other forms of compensation such as incentives and bonuses;" Zoeller Dec. Ex.7, WVR000984-988, showing commission guidelines for Sales Representatives). In addition, Bitner and Haupt both testified that they commonly worked more than 40 hours without overtime compensation. (Bitner Depo. 175:8-12; Bitner Dec. ¶ 8; Haupt Dec. ¶ 7). The fact that Bitner and Hapt worked over 40 hours per week and were required to do so of off the clock is supported by their manager, Thomas Delmore. (Delmore Dec. ¶¶6-7). Plaintiffs have demonstrated that In-House Sales Representatives are similarly situated in regards to their legal claim that they were not compensated for all hours worked.

The same is the case for the Discovery Sales Representatives. Toshia Parker was also compensated with an hourly rate and on commission. (Parker Dec. ¶ 5; Zoeller Dec. Ex. 7 showing commission guidelines). Parker and other Discovery Sales Representatives were not permitted to be on the clock for more than 40 hours, though their managers observed them working more than 40 hours. (Parker Depo. 102:12-103:3; Parker Dec. ¶¶6-9).

Taking all of this evidence into consideration, Plaintiffs have easily met their lenient burden of showing a factual nexus between their allegations of FLSA violations and the experiences of other putative opt-in Plaintiffs.  Fosbinder-Bittorf, 2013 WL 3287634, at *3 (internal quotations omitted); Berndt, 2013 WL 3287599,

at *6 (same). In other words, Plaintiffs have sufficiently shown at this stage that they are similarly situated to the putative opt-in Plaintiffs.

### B. Plaintiffs allege Wyndham suffered and permitted work to be performed off-the-clock.

Where the employer knows or has reason to believe that an employee is continuing to work, even when technically off the clock, that time is work time. 29 CFR § 785.11. If the employer has actual or constructive knowledge of the work performed by an employee, it must be compensated. Kellar v. Summit Seating, Inc., 664 F.3d 169, 177 (7th Cir. 2011). Simply promulgating a rule against overtime is not sufficient to relieve an employer from FLSA liability for work that is suffered or permitted. 29 CFR § 785.13.

Employers, not employees, bear the ultimate responsibility for ensuring that employee time sheets are an accurate record of all hours worked. Skelton v. American Intercontinental University Online, 382 F.Supp. 2d 1068, 1071-72 (N.D. Ill. 2005). Where employees have sufficient evidence that they were told not to record overtime, the employer cannot hide behind a policy of having employees keep their own hours to avoid compensating employees for all hours worked. Id. At this stage, Plaintiffs need not show that Defendant was aware that employees were performing uncompensated work, only that this question is common to all putative class members. Fosbinder-Bittorf, 2013 WL 3287634, at *4; Berndt, 2013 WL 3287599, at *7.

Here, Wyndham sales representatives were required to keep track of their own hours, and to get approval for all potential overtime hours prior to working 40

hours in a pay period. (Zoeller Dec. Ex. 8, Sales Representatives Rules of Engagement, WVR001050). Opt-in plaintiffs testify that they commonly worked over 40 hours per week, and that their supervisors were aware that this work was being performed. (Parker Dec. ¶¶ 6-7; Parker Depo. 102:23-103:3; Bitner Depo. 262:22-263:7; Bitner Dec. ¶¶7-8; Haupt Dec. ¶¶6-7). In-House Sales Representatives Bitner and Haupt testified that they were required to clock out after completing morning tours, though they continued performing work. (Bitner Dec. ¶6; Haupt Dec. ¶5). Discovery Sales Representative Parker was also instructed by her manager to clock out between tours, though she continued to perform work during this time. (Parker Dec. ¶¶4, 7). Based on information and belief, all Wyndham sales representatives are similarly situated as to whether Wyndham's pay policies and practices violate the law.

Conditional certification of this class is warranted because Defendant employed a common policy of not compensating its sales representative for all hours worked. Plaintiffs have made a modest factual showing that this policy affected a similarly situated class of sales representatives. At this "fairly lenient" stage of certification, plaintiffs have presented sufficient evidence that their situation is similar to the position of putative class members, and conditional certification is warranted. Hathaway v. Masonry, 2012 WL 1252569, No. 5:11-CV-121 (W.D. Ky. April 13, 2012) (conditionally certifying a class of brick masons based on plaintiff's evidence that they were required to travel from the central facility to work sites in the company vehicle).

Here, Plaintiffs have proffered that they were required to perform work when not clocked in, either because they had completed their morning tours (Bitner Dec. ¶6; Haupt Dec. ¶5) or because they were required to keep their hours under 40. (Parker Dec. ¶¶4, 7). Plaintiffs have presented time records and pay stubs demonstrating that they clocked out at certain times and kept time on-the-clock under 40 hours, pursuant to their managers' instructions, which applied to all In-House and Discovery Sales Representatives. (See Zoeller Dec. Ex. 2, 3). Plaintiffs continued to work alongside managers during these periods of improper compensation. (Parker Depo. 257:7-14; Bitner Dec. ¶9; Parker Dec. ¶7; Haupt Dec. ¶8). There is a similarly situated class of employees who were subject to Defendant's policy of not compensating sales representatives for all time they were suffered or permitted to work. Conditional certification is appropriate for this class.

## IV.   THE COURT SHOULD APPROVE PLAINTIFFS' PROPOSED NOTICE AND DISTRIBUTION PLAN

Plaintiffs' proposed notice and consent form are attached as Exhibit 10 to the Declaration of Attorney Zoller in Support of this Motion.  The notice is based on notices approved by this Court and is consistent with this Court's recent rulings regarding certain required statements.  See Fosbinder-Bittorf, 2013 WL 3287634, at *7 (requiring a statement informing opt-in plaintiffs that they may be liable for the defendant's costs and expenses if the defendant prevails); Freeman, 2013 WL 4049542, at *11 (requiring a statement informing opt-in plaintiffs that they may have to testify in a deposition or at trial). Plaintiffs submit that it fairly and

reasonably explains the pros and cons of participating, including a fair recitation of Plaintiffs' allegations, Defendant's denial of liability, and the effect of opting in.

Plaintiffs' proposed plan of distribution is also consistent with this Court's prior decisions granting conditional certification. First, Plaintiffs request a 60-day deadline for potential opt-in plaintiffs to return the consent form. Witteman v. Wisconsin Bell, Inc., No. 09-CV-440-VIS, 2010 WL 446033, at *3 (W.D. Wis. Feb. 2, 2010). Second, Plaintiffs request that the Court order Defendant to produce a list, in electronic importable format (e.g., Microsoft Excel (.xls)), of all Sales Representatives employed by Wyndham between June 25, 2013 and the date of the Court's order, including their name, mailing address, dates of employment as a Sales Representative, and employee identification number, within 14 days of the order. Freeman, 2013 WL 4049542, at *11; Berndt, 2013 WL 3287599, at *13. Third, Plaintiffs request that the Court authorize Plaintiffs' counsel to mail the notice to the individuals identified on the foregoing list and that Wyndham also be required to post notice in "conspicuous places available to employees (for example, work bulletin boards)." Fosbinder-Bittorf, 2013 WL 3287634, at *7.

## CONCLUSION

Plaintiffs, the opt-in Plaintiffs and the putative opt-in Plaintiffs were all employed by Wyndham as Sales Representatives in Wisconsin. At this early stage of the litigation, Plaintiffs have sufficiently alleged and evidenced that they were similarly denied minimum wages and overtime pay as a result of Defendant's common policy and practice of requiring Sales Representatives to clock out when

not giving tours or having meetings, and of not recording overtime hours. Thus, Plaintiffs have established that they are similarly situated for the purpose of conditional certification and notice, and respectfully request that their motion be granted.

Dated this 1st day of November, 2013.

HAWKS QUINDEL, S.C.

By:     *s/ David C. Zoeller*
William E. Parsons, State Bar No. 1048594
Email: wparsons@hq-law.com
David C. Zoeller, State Bar No. 1052017
Email: dzoeller@hq-law.com
222 West Washington Avenue, Suite 450
P.O. Box 2155
Madison, Wisconsin 53701-2155
Telephone: 608/257-0040
Facsimile: 608/256-0236

NICHOLS KASTER, PLLP
*Attorneys for the Plaintiff*

By:     *s/ Tim Selander*
Paul J. Lukas MN Bar No. 22084X
Tim C. Selander, MN Bar No. 0387016
G. Tony Atwal, MN Bar No. 0331636
4600 IDS Center, 80 South 8th Street
Minneapolis, MN  55402
T: (612) 256-3200
F: (612) 215-6870
E: lukas@nka.com
  selander@nka.com