IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

**THOMAS BITNER,**
**TOSHIA PARKER,**
and **SAMANTHA STANGL**
individually and on behalf
of those similarly situated,

                Plaintiffs,                Case No: 13-CV-451-wmc

    vs.

**WYNDHAM VACATION RESORTS, INC.**

                Defendant.

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTION
FOR CONDITIONAL CERTIFICATION AND COURT-AUTHORIZED NOTICE**

## INTRODUCTION

      Plaintiffs have brought this suit alleging that Defendant Wyndham Vacation Resorts has violated the Fair Labor Standards Act ("FLSA") and Wisconsin law through its failure to compensate In-House and Discovery Sales Representatives for all hours worked, including overtime hours. They have presented evidence, including testimony from one of the Defendant's former supervisors, that Wyndham customarily and regularly suffered and permitted these employees to work off-the-clock in order to avoid clocking overtime wages.

      Defendant's brief opposing Plaintiffs' Motion for Conditional Class Certification does not appear to refute that this off-the-clock work was performed by the Plaintiffs. Instead, Defendant's opposition is largely a distraction from the

1

underlying matter, and an attempt to create issues where none exist. As such, many of Defendant's arguments should be disregarded as immaterial to the question before this Court.

At conditional certification, the relevant issue is "whether the proposed plaintiffs are similarly situated with respect to their allegations that the law has been violated." <u>Brabazon v. Aurora Health Care, Inc.</u>, 2011 U.S. Dist. LEXIS 37057 at *8 (E.D. Wis. March 28, 2011)[1]. Plaintiffs seek conditional certification of <u>two</u> FLSA classes[2], one of In-House Sales Representatives and one of Discovery Sales Representatives. (Dkt. #46, ¶¶ 27-28). As such, the ink spilled by Defendant on the differences between In-House and Discovery Sales Representatives is immaterial to the certification of each of these separate classes.

Also immaterial at this stage is Defendant's complaint that calculating damages will be difficult. Defendant gets well ahead of itself in raising this issue at such an early point in the case. At the conditional certification stage, "the court's specific concern is whether plaintiffs have propounded facts suggesting the existence of a nation- or region-wide class…that is 'similarly situated' to the…named plaintiffs." <u>Berndt v. Cleary Building Corp.</u>, 2013 U.S. Dist. LEXIS 91619, *23 (W.D. Wis. Jan. 25, 2013, Conley, J.). Questions as to the liability of Defendant, or calculating damages for particular plaintiffs, are not germane to this

---

[1] Copies of all unpublished opinions are attached as Exhibit A to the Declaration of David C. Zoeller in Support of Plaintiffs' Reply Brief in Support of their Motion for Conditional Certification and Court-Authorized Notice, filed herewith.

[2] Defendant's arguments as well as the declarations it has submitted in support of its arguments seem to treat the classes of In-House Sales Representatives and Discovery Sales Representatives as one. This is not the case. These classes have been divided as the Plaintiffs recognize that there are some factual distinctions between the groups that make separate treatment more appropriate. (See Plaintiffs' Second Amended Complaint, dkt. #46).

motion.

Finally, Defendant shifts the attention away from unrefuted facts that management level employees required off-the-clock work and argues that the Court should consider *why* employees worked off-the-clock. Defendant goes so far as to guess as to potential motivations. Motivations are immaterial. What is material is that the Plaintiffs and the putative class members 1) commonly performed off-the-clock work and that 2) Defendant knew or should have known that off-the-clock work was being performed. The deposition testimony of the Plaintiffs supports that Defendant's managers were aware of the off-the-clock work and in fact directed that it be performed. (Dkt. #27, Bitner Depo. at 262:22-263:7; dkt #29, Haupt Depo. at 98:2-22; dkt. #40, Parker Dec. ¶¶7-8; dkt. #28, Parker Depo. 102:12-103:3; 105:8-14). The unrefuted declaration testimony of one of Defendant's former In-House Sales Managers further confirms that this was the case. (Dkt. #42, Declaration of Thomas Delmore).

Plaintiffs have presented evidence suggesting that Wyndham had a general policy or practice of requiring its In-House and Discovery Sales Representatives to under-report their hours and to work more than 40 hours per week without proper compensation. The deposition and declaration testimony of Plaintiffs Thomas Bitner, Toshia Parker, Thomas Delmore and Abraham Haupt, along with the sales, tour, and pay schedules and information kept by Defendant, demonstrate that Wyndham has and enforces just such a policy. As such, this case is appropriate for class treatment.

## CLARIFICATION OF THE FACTUAL RECORD

The Plaintiffs have recited the facts in their moving brief, and only restate facts here for purposes of clarifying evidence brought forth in Defendant's opposition.

## I. Down Time

Defendant cites to the deposition of Toshia Parker for the proposition that employees "had time to read a book and take lunch breaks during these downtime periods." (Defendant's Brief at p. 10 citing dkt. #28, Parker Dep. at 244). This is not consistent with the deposition testimony. The transcript at page 244 reads as follows:

> Q: Typically, what would you do when you were on downtime?
>
> A: It varied. It depended -- I mean, you might get ten minutes. You might get thirty minutes. You might get three minutes. So it varied. Especially with discovery, you really didn't know how much downtime you were going to get. You didn't know if you were going to get front line or -- you couldn't get into anything long-winded very often. If you knew you were going to get ten, fifteen, twenty minutes and there was something your manager needed to review with you, you might do that.
>
> Q: Well, might you read a book?
>
> A: You didn't ever really know you had that much time. There was never that kind of -- the time wasn't organized that way.

>Q: So is the answer to the question if you read a book, no? You never read a book? You never looked at the Internet?
>
>A: I think on the off-season there might have been an opportunity to do that.

(Dkt. #28, Parker Dep. at 244:2-23). Thomas Bitner also testified that he had very little downtime, that there was "always something to do in-house." (See dkt. #27, Bitner Dep. 165-171). Haupt elaborated on these tasks, testifying that between tours he would update his logbooks, do follow-up with owners, and coach new sales representatives. (Dkt. #29, Haupt Dep. 176:11-177-23). Haupt testified that he was not able to leave the Wyndham premises without permission. (Id. at 176:15-18). Similarly, Parker testified that she was required to be on the premises during that time. (Dkt. #28, Parker Dep at 243).

## II. Recoverable Draw

Defendant suggests that Parker testified that the reason she worked off-the-clock was because she "she did not like having to pay back the draw from her future commissions." (Defendant's Brief at p.12 citing Parker Dep. at 220-223). This is not consistent with the testimony. When asked about recording overtime hours, Parker states:

>A: Those were two separate issues.
>
>Q: So you're assuming because you weren't paid for all the hours worked?
>
>A: I'm saying that we weren't paid for all the overtime we

worked, yes.

(Dkt. 28, Parker Dep. at 221:16-20). Defendant attempts to confuse the issue, and to confuse the deponent. As Defendant spells out in its opposition, when a commissioned employee works overtime hours, the commissions earned must be included in the regular rate. Ms. Parker (as well as the other deponents) understood this to be the case, and understood that these amounts were not part of their recoverable draw.

> A: It's based on how much commission you make. Your hourly rate is calculated for overtime.
>
> Q: Is what I said accurate?
>
> A: I don't know. I'm not a numbers person. I'm telling you as best as I understand it and as it was portrayed to me. Once you hit over forty, your overtime is calculated based on the amount of commission that you made that week. So your overtime is calculated based on your amount of commission. I worked very hard for Wyndham. I did what was asked for me. I want to be paid for those hours.

(Dkt. #28, Parker Dep. 225:6-17). Ms. Parker's testimony is that her manager did not permit her to record more than 40 hours a week but required her to work significantly more than 40 hours. (Id. at 101:22-103:3).

## ARGUMENT

I. THE PROPER INQUIRY AT CONDITIONAL CLASS CERTIFICATION IS WHETHER PUTATIVE CLASS MEMBERS ARE SIMILARLY SITUATED WITH REGARD TO THEIR ALLEGATIONS OF FLSA VIOLATIONS

At this first step, conditional certification for the putative classes, the Court merely rules on whether the Plaintiff's allegations are sufficient to support notice to the class. Plaintiff's burden at the conditional certification stage is to "[demonstrate] a reasonable basis for believing that she is similarly situated to potential class members." DeKeyster v. Thyssenkrupp Waupaca, Inc., 2008 U.S. Dist. LEXIS 102318, *2 (E.D. Wis. 2008, Griesbach, J.). The focus of the Court's inquiry is whether the proposed plaintiffs are similarly situated in respect to their allegations of violations of the law. Brabazon, 2011 WL 1131097, at *3. Defendant invites the Court to go far beyond this and to evaluate how the Plaintiff will calculate damages and to make credibility determinations which go towards the merits of the Plaintiff's claims.

Defendant summarizes its argument against conditional class certification in six points. (See Defendant's Brief in Opposition to Plaintiffs' Motion for Conditional Class Certification (Defendant's Brief) at pp. 27-28). Each of these arguments will be addressed below, but generally, these arguments can be divided into three camps and dispelled with quickly. First, Defendant argues that factual differences between In-House Sales Representatives and Front Lines Sales Representatives preclude this matter from becoming conditionally certified. These are separate classes and as such, factual distinctions between them are of no consequence. The second group of

arguments involves alleged variations in the number of hours that were worked off-the-clock between different members of the putative classes. Defendant does not cite to any authority to support that this is a proper consideration at conditional class certification, and significant authority to the contrary, including authority from this Court, supports that damages are not considered until decertification. Finally, Defendant argues that because there may be different motivations for members of the putative classes to work off-the-clock, the putative class members are not similarly situated. This argument misconstrues a basic concept of the FLSA; that all work that is suffered or permitted is compensable. It also ignores evidence in the record that the work was performed at the direction of management. Put simply, why an employee works off-the-clock does not matter. What does matter is that the work was performed, that it was commonly performed by members of the putative classes, and that Defendant allowed, and in fact, required it to be performed.

### A. Differences Between the Job Duties and Pay Structure Between In-House Sales Representatives and Discovery Sales Representatives May Exist But are Not Relevant

Plaintiffs' Second Amended Complaint seeks conditional class certification with regard to two separate groups of employees:

> All persons who have been or are currently employed by Defendant as In-House Sales Representatives in the state of Wisconsin at any time during the past three years.

and

> All persons who have been or are currently employed by Defendant as Discovery Sales Representatives in the state of Wisconsin at any time during the past three years.

8

(Dkt. #46 at ¶¶27-28). Despite this, Defendant argues that "discovery and in-house representatives perform different sales functions at different times" (Defendant's Brief at p. 27). Defendant argues that the types of tours given by each group is different, that the products sold are different, and that only In-House Sales Representatives are responsible for making their own sales opportunities. (Id.).

All of this may be true. Further, it may be true that the off-the-clock work performed by each of these groups occurred at different times during the day, week, month, or year. It is likely true that different management employees directed or oversaw the off-the-clock work performed by these two groups. For this reason, the two classes have been separated and Defendant's perceived distinctions are immaterial to the question of whether individuals within each class are similarly situated.

Members of each of these proposed classes were suffered and permitted to work hours off-the-clock by Defendant. They performed this work off-the-clock under a common policy, enforced through management level employees, under which In-House Sales Representatives and Front Line Sales Representatives worked off-the-clock to avoid logging overtime hours.

> **B.** **The Mere Possibility that Damage Calculations May Take Some Effort Does Not Impact the Court's Analysis Regarding Whether the Plaintiffs and Putative Class Members Are Similarly Situated**

The Court's inquiry at this stage is whether Plaintiffs have made a modest factual showing that potential class members were "victims of a common policy or plan that violated the law." Fosbinder-Bittorf, 2013 WL 3287634, at *3. Nowhere in

9

this standard is the Court compelled to consider the complexity of calculating damages at some point in the future. To raise this before discovery is complete, before experts have been disclosed, and before decertification motions, puts the cart well before the horse. Ease of calculating damages is not an element of any test for conditionally certifying a collective action, and does not relate to this inquiry.

              1.        **Counsel for the Putative Classes Are Capable of Calculating Damages for the Classes**

Defendant provides the Declaration of Jeanie Willis to describe the manner in which Wyndham computes overtime wages when an employee is on the clock for more than 40 hours. (Dkt. #61). The declaration, in a somewhat labored fashion, describes the method of computing the regular rate of an employee on a weekly basis for computation of overtime payment under 29 U.S.C. § 207(e). Id. The regular rate for an employee must be calculated on a week to week basis in any overtime matter brought under the FLSA and must be computed on a class-wide basis for any such claim brought as a collective action.

Counsel, including counsel for the Plaintiffs in this case and damages experts retained by counsel, commonly run these calculations for classes much larger than the class sought in the instant case. (Dkt. #66, Declaration of David C. Zoeller in Support of Plaintiffs' Reply Brief in Support of their Motion for Conditional Certification and Court-Authorized Notice, ("Zoeller Dec.") ¶1). Beyond this, running individual regular rate calculations which involve payment of commissions and bonuses is not unique or overwhelmingly difficult. One area where overtime claims have been common recently are cases alleging that mortgage loan officers

have been misclassified as FLSA exempt employees. In many of these cases, employees earn commissions and regular rates have to be determined by establishing the number of hours worked and dividing this amount by the amount of wages earned, including bonuses and commissions. Counsel is unaware of a case where this been a barrier or even a consideration at conditional class certification. However, numerous cases from this Court support that this is not a consideration at conditional certification. See Kelly v. Bluegreen Corp., 256 F.R.D. 626, 631 (W.D. Wis. 2009) (granting conditional class certification to class of commissioned only sales employees); Sharpe v. APAC Customer Servs., Inc., 09-CV-329-BBC, 2010 WL 135168 (W.D. Wis. Jan. 11, 2010) (granting motion for conditional certification to call center employees paid an hourly wage and a bonus system); Sjoblom v. Charter Commc'ns, LLC, 571 F. Supp. 2d 961, 972 (W.D. Wis. 2008) (conditionally certifying collective action comprised of installation technicians paid regular wages commissions); Russell v. Illinois Bell Tel. Co., 575 F. Supp. 2d 930, 932 (N.D. Ill. 2008) (granting motion for conditional certification of class of employees paid on hourly wage, commissions, and bonuses); Ballou v. iTalk, LLC, 11 C 8465, 2013 WL 3944193, at *1 (N.D. Ill. July 31, 2013) (granting motion for conditional certification to class of retail sales employees paid hourly wages and commissions).

      2.    **Variations in Damages Between the Plaintiffs and Putative Class Members are Not Considered at Conditional Certification**

Beyond arguments on the difficultly in calculating damages, Defendant makes a significant effort in its opposition to point to differences in the number of

hours worked by the Plaintiffs and putative class members. These arguments ultimately relate to how much time was worked off-the-clock and relate to calculation of damages. However, allegations of variations in the amount of unpaid time worked-off-the clock do not weigh against conditional certification and if considered at all, are considered at the decertification stage. Fosbinder 2013 WL 3287634 at *18-19.

Defendant's declarations of its current employees as well as selected excerpts of deposition testimony, suggest that there will be variation between class members regarding the precise number of hours they work in a particular week. First, Defendant's declarations contradict the Plaintiffs as they state that no off-the-clock work was performed. (See dkt. ##52-60). Because the Court does not make credibility determinations at the conditional certification stage, to the extent these statements conflict with the Plaintiffs, they are to be resolved in the Plaintiffs' favor.[3] Berndt at *22. Beyond this, these variations in damages do not weigh against conditionally certifying the class. See Shakib v. Back Bay Rest. Group, Inc., 2011 U.S. Dist. LEXIS 124143, *10-11 (D. N.J. 2011) (Rejecting Defendant's argument that actual payment of some overtime by a defendant for some hours

---

[3] Additionally, courts have given little weight to similar evidence collected from current employees. Such statements are inherently biased given the control an employer exercises over its employees, particularly here, where Sales Representatives are dependent upon their managers to get the tours that will result in commissions. See Whitlock v. FSL Management, LLC, 2012 U.S. Dist. LEXIS 112859 (W.D. Kentucky, Aug. 10, 2012). In addition, the declarations submitted by Defendant are untested by Plaintiffs, who have not had a chance to depose these declarants, though Defendant has deposed Bitner, Haupt, and Parker. At this stage, these unverified competing statements do not undermine Plaintiffs' showing. See Morris v. Lettire Const., 2012 U.S. Dist. LEXIS 134860, at *16 (S.D.N.Y. Sept. 18, 2012); Winfield v. Citibank, N.A., 843 F. Supp. 2d 397, 407 n. 6 (S.D.N.Y. 2012); Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 368 (S.D.N.Y. 2007); Creely v. HCR ManorCare, Inc., 789 F. Supp. 2d 819 (N.D. Ohio 2011).

makes it likely that claims will require specific, individualized proof as to hours that the defendant refused to pay, finding these damages issues going to the merits of the case and inapplicable at conditional certification); White v. Osmose, Inc., 204 F. Supp. 2d 1309, 1318 (M.D. Ala., 2002) ("Because [Defendant] did in fact pay some overtime, it is likely that any particular claim will require specific, individualized proof as to any hours that Osmose refused to pay. Whether individualized proof will be required as to Osmose's liability for each employee's claim, as opposed to damages, is an open question properly addressed at a later stage in the proceedings, such as on a motion for decertification.); Clarke v. Convergys Customer Mgmt. Group, Inc., 370 F. Supp. 2d 601, 606 (S.D. Tex. 2005) (rejecting argument that the inherently individualized nature of damages in off-the-clock overtime claims make them unfit for collective treatment).

At decertification, after class wide discovery is complete and after expert disclosures have been made, a duty arises for the "court and class counsel to explore the possible ways of overcoming problems in calculating individual damages." Fosbinder 2013 WL 3287634 at *18 citing Espenscheid v. DirectSat USA, LLC, 705 F.3d 770 (7th Cir. 2013). This duty is not present at the Conditional Class Certification stage.

Because individual variation in damages are not considered at the Conditional Certification stage and because the complexity of a future damages model is equally inapposite to the Court's analysis, the Plaintiffs have met their burden to establish that they are similarly situated with regard to their allegations

13

of unpaid off-the-clock work.

### C. Plaintiffs and Putative Class Members Worked Off-the-Clock At the Direction of Their Employer

The Plaintiffs have presented evidence that In-House managers as well as Discovery managers made it abundantly clear to the Plaintiffs and to the putative class members that they could not record all of the hours worked in order to avoid recording overtime hours. In deposition, Parker, Bitner, and Haupt all testified that they were instructed by <u>multiple</u> managers that they were not to be clocked in for more than forty hours. (Bitner Depo. 262:22-263:7; Bitner Dec. ¶10; Haupt Dec. ¶8; Haupt Depo. 98; Delmore Dec. ¶6; Parker Depo. 102:12-103:3; 105:8-14). Manager Thomas Delmore submitted a declaration stating that he communicated and enforced this no-overtime policy when he was managing In-House Sales Representatives. (Dkt. #42 at ¶6).

Ignoring this evidence, Defendant attempts to liken the instant matter to a case where the actions of one misguided manger are imputed on a nationwide corporation. Defendant relies on <u>Beecher v. Steak N Shake Operations, Inc.</u> in this attempt to fashion this a "rogue manger" case. 904 F. Supp. 2d 1289 (N.D. Ga. 2012). <u>Beecher</u> considered certification of a nationwide class of <u>all</u> Steak N Shake employees for alleged overtime and minimum wage violations. 904 F. Supp. 2d 1289 (N.D. Ga. 2012). Plaintiffs in that case presented little more than general evidence that individual store managers instructed them not to clock in for overtime. <u>Id.</u> The court's denial of conditional certification was based on the large size of the class and the paucity of evidence outside of this policy of discouraging overtime, not based on

14

a blanket conclusion that a policy discouraging overtime is <u>never</u> enough to justify certification, as Defendant claims. <u>Id.</u> at 1298-99; Def.'s Br. 31.[4]

This is not a nationwide case, nor is this an instance where one rogue manager has caused wage and hour violations. The evidence presented establishes that no less than 5 managers, Thomas Delmore, Kyle Mays, Christine Kwitek, Lance Tinsely, and Jeff Gore, all working at Defendant's Mirror Lake sales office, instructed the Plaintiffs to work off-the-clock. (See dkt. #41, Haupt Dec. at ¶8; dkt. 39, Bitner Dec. at ¶10; Parker Depo. 101:22-103:3).

Beyond this, the declaration of Thomas Delmore (dkt. #42 at ¶9) indicates that the Director of sales, Kyle Mays, instructed him to direct In-House Sales Representatives to work off-the-clock to avoid clocking more than 40 hours. As such, the evidence in this case relates to two groups of employees working at one location, not a nationwide class of employees working in divergent job titles. Beyond this, the Plaintiffs' evidence exceeds what has been offered in these "rogue manager" cases, as the numerous managers as well as at least one of their supervisors were responsible for implementation of the illegal pay policy at issue.

---

[4] The other cases cited by Defendant are also inapposite to the instant case. In these cases, the putative class members presented only the statements of a few employees that they themselves had not been properly compensated. <u>Dado v. Speedway SuperAmerica LLC</u>, 2009 U.S. Dist. LEXIS 3816, *10-11 (D. Minn. Jan. 20, 2009); <u>Saleen v. Waste Management</u>, 649 F. Supp. 2d 937, 941 (D. Minn. 2009). In both <u>Dado</u> and <u>Saleen</u>, plaintiffs attempted to certify nationwide classes, unlike here, where Plaintiffs allege only that this policy is enforced in this particular Wyndham office. In <u>Saleen</u>, plaintiffs argued that defendant maintained an illegal unwritten policy not to compensate employees for time worked during meals, but defendant presented evidence that on many occasions, it did pay for such work. <u>Saleen</u>, 649 F. Supp. 2d at 942. Here, Plaintiffs have presented evidence of the low number of hours when they were clocked in and testimony describing the actual hours worked. Defendant has not presented evidence refuting the number of hours worked by Plaintiffs. Instead, Defendant focuses on other irrelevant issues. As such, neither of these cases is relevant.

## II. NO CONFLICT EXISTS BETWEEN CLASS MEMBER DELMORE AND OTHER MEMBERS OF THE PUTATIVE CLASSES

Defendant's argument that the Court should deny conditional certification because of a "significant and inherent conflict within the proposed class" must be rejected. First, like Plaintiffs Bitner and Haupt, opt-in Plaintiff Thomas Delmore ("Plaintiff Delmore") worked as an In-House Sales Representative. (See dkt. #42, Declaration of Thomas Delmore, ¶2). He was later promoted to a management position. (Id.). His potential claim in this case covers only his employment in the In-House Sales Representative position. To be clear, Plaintiffs do not seek to recover overtime pay or minimum wages for any employee during the time they were employed in a management position. Second, if Defendant were correct, which it is not, in every FLSA case in which a court granted conditional certification, the definition of eligible employees who should receive notice would explicitly exclude any otherwise eligible employee who was promoted to a management position. Indeed, this Court recently conditionally certified an off-the-clock case involving claims by employees with some management responsibilities (foremen) and claims by the workers they managed (field workers). Berndt, 2013 WL 3287599. Third, Defendant despite labeling this purported conflict as "significant and inherent," fails to identify any other putative opt-in plaintiffs who were promoted to managerial positions during the statutory period. Rather, on the current record, Plaintiff Delmore is the only individual Defendant has identified with this particular employment history. Rather than inferring that this is a "significant and inherent" conflict, the record strongly suggests that if this is anything, it is an

16

insignificant anomaly. Fourth, Defendant's reference to "conflict" is an inappropriate attempt to incorporate the requirements of Rule 23 class certification into the FLSA conditional certification analysis. Even if such an analysis were appropriate, which it is not, the purported conflict does not defeat conditional certification. Plaintiff Delmore is not a named plaintiff and thus does not seek to represent the putative collective class. Second, even in Rule 23 cases under a much heightened scrutiny, district courts have certified classes which included both supervisory and nonsupervisory employees, so long as all the employees shared the same interests and suffered the same injuries. See, e.g., Wilfong v. Rent-A-Ctr., Inc., Case No. 00-CV-680-DRH, 2001 WL 1795093, at *7 (S.D. Ill. Dec. 27, 2001) ("the fact that some Plaintiffs may have been promoted does not render them unsuitable as class representatives"); Jefferson v. Windy City Maint., Inc., Case No. 96 C 7686, 1998 WL 474115, at *9 (N.D. Ill. Aug. 4, 1998) (holding that adequacy was not defeated where class representative supervised and disciplined other class members because representative had the same interest as class members in eliminating discrimination).

At best, Defendant's arguments regarding potential conflicts should be resolved at the decertification stage, after the parties have conducted discovery. As the Court explained in Fosbinder-Bittorf,

> At that point, the court will examine in detail the evidence and arguments submitted by defendant about whether the plaintiffs who opt-in are similarly situated. . . . If the court finds at that time that Fosbinder–Bittorf is not similarly situated to the opt-in plaintiffs, it may dismiss her from the case and give the remaining opt-in plaintiffs a chance to file an amended complaint with a newly-named plaintiff or

> the court may decertify the entire class if the class members as a whole are not similarly situated.

2013 WL 3287634 (internal citations omitted).

### III. THE CONTENT AND FORM OF PLAINTIFFS' PROPOSED NOTICE IS APPROPRIATE

Defendant suggests that the notice should included language regarding the potential risks of participation similar to language included in the <u>Freeman v. Total Sec. Mgmt.- Wisconsin, LLC</u> matter. 2013 U.S. Dist. LEXIS 112871. That language is as follows:

> The risks in joining this lawsuit may include: (1) being required to participate in the litigation by testifying at deposition and/or at trial; and (2) having a portion of the defendants' court costs and expenses assessed against you if you do not prevail on your claim.

Plaintiffs do not object to inclusion of this language.

Defendant asks that this language be bolded. This is not appropriate. The risk that costs will be assessed against opt-in Plaintiffs is exceedingly low. The likely motivation on Defendant's part to emphasize this language is to discourage individuals from participating in the case by emphasizing risks. Consistent with the <u>Freeman</u> order, Plaintiffs are agreeable to not using bold font for the portions of the Notice addressing the benefits of participation. However, Plaintiffs do request that those portions of the notice addressing deadlines to join remain bolded as these portions of the notice neither atoll the benefits or risk of participating, but merely inform the recipient of critical deadlines.

The Plaintiffs have no objection to the proposed revisions to the consent form.

## CONCLUSION

The Plaintiffs have presented evidence exceeding the standard applied by this Court for conditional class certification. The Plaintiffs, like members of the putative classes, were subject to a common, unlawful pay practice. Specifically, Defendant suffered and permitted the Plaintiffs and the putative class members to work off-the-clock in order to avoid paying overtime wages. As such, Plaintiffs request that the Court authorize the Plaintiffs to send Notice to the putative class members and to compel Defendant, within 10 days of the Court's order, to produce to the Plaintiffs the names and addresses of all putative class members working for Defendant during the three year period applicable to this suit.

Respectfully submitted this 11th day of December, 2013.

        **HAWKS QUINDEL, S.C.**

        By: *s/ David C. Zoeller*
        William E. Parsons, State Bar No. 1048594
        Email: wparsons@hq-law.com
        David C. Zoeller, State Bar No. 1052017
        Email: dzoeller@hq-law.com
        222 West Washington Avenue, Suite 450
        P.O. Box 2155
        Madison, Wisconsin 53701-2155
        Telephone: 608/257-0040
        Facsimile: 608/256-0236
        **NICHOLS KASTER, PLLP**
        Paul J. Lukas, MN Bar No. 22084X
        Tim C. Selander, MN Bar No. 0387016
        G. Tony Atwal, MN Bar No. 0331636
        4600 IDS Center, 80 South 8th Street
        Minneapolis, MN 55402
        T: (612) 256-3200
        F: (612) 215-6870
        E: lukas@nka.com
           selander@nka.com
           tatwal@nka.com

        *Attorneys for the Plaintiffs*