IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
───────────────────────────────────────────────────────────────

THOMAS BITNER and TOSHIA
PARKER, individually and on behalf of
those similarly situated,

                      Plaintiffs,                       OPINION & ORDER

   v.

                                                    13-cv-451-wmc

WYNDHAM VACATION RESORTS, INC.

                     Defendant.
───────────────────────────────────────────────────────────────

In this putative class and collective action, plaintiffs Thomas Bitner and Toshia Parker allege defendant Wyndham Vacation Resorts, Inc. ("Wyndham") maintained policies that required its sales representatives to work off the clock and in excess of 40 hours per week without proper minimum wage and overtime compensation in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and Wisconsin law.  Plaintiffs now ask the court to certify conditional classes of current and former Wyndham In-House Sales Representatives and Discovery Sales Representatives, pursuant to 29 U.S.C. § 216(b). (Dkt. #36.)  Because plaintiffs have made the modest factual showing necessary for conditional certification, the court will grant the motion and authorize notice subject to the revisions noted in the opinion below.[1]

---

[1] During the pendency of the motion for conditional certification, defendant filed a notice of supplemental authority, to which plaintiff responded.  Defendant then sought leave to reply.  (Dkt. #80.)  In that motion, defendant identified its objection to plaintiff's response.  The court has read and considered the arguments therein, and the motion to file an additional, longer reply is denied as moot.

BACKGROUND

**I. Parties**

Defendant Wyndham Vacation Resorts, Inc. is a Delaware corporation with its principal place of business in Orlando, Florida. Wyndham is in the business of developing, marketing and selling vacation ownership interests. To conduct that business, Wyndham employs sales representatives, whose primary job duty is to sell timeshare properties and/or promotional packages for such properties. All sales representatives share that same central duty, but their specific involvement in the process differs. In-House Sales Representatives give tours to existing timeshare owners each morning and set up back-end meetings, to occur later the same day, in order to sell property and packages. Discovery Sales Representatives make sales to potential buyers during sales meetings, which occur after the buyers return from tours with In-House or Front Line Sales Representatives.

The named plaintiffs in this case are Thomas Bitner, who worked for Wyndham as both an In-House Sales Representative and a Front Line Sales Representative,[2] and Toshia Parker, who worked for Wyndham as a Discovery Sales Representative. Both worked from Wyndham's only Wisconsin facility, which is located in the Wisconsin Dells.

**II. Alleged Policies**

Wyndham classifies all sales representatives as non-exempt from overtime and minimum wage, and it pays them a recoverable hourly draw of $7.25 per hour plus commissions on their sales. When representatives earn a commission, the hourly draw previously paid out is recovered from that commission. Wyndham sales representatives are

---

[2] Bitner is bringing claims for his work as a Front Line Sales Representative individually, and plaintiffs have not moved to conditionally certify a class of Front Line Sales Representatives.

required to keep track of their own hours and to get approval for all potential overtime hours *before* they work more than 40 hours in a pay period.

Plaintiffs' case centers on Wyndham's alleged policy of preventing its In-House and Discovery Sales Representatives from recording more than 40 hours in a week.  Pursuant to this policy, plaintiffs allege that they are required to clock out of Wyndham's timekeeping system: (1) at specific times in the day (for instance, after In-House Sales Representatives complete their morning tours); and (2) whenever they are nearing 40 hours on the clock.

As one of approximately 25 In-House Sales Representatives at the Wisconsin Dells facility, plaintiff Thomas Bitner avers that his primary duty was to sell Wyndham timeshare ownership to existing timeshare owners.  To make sales, he gave tours of Wyndham properties each morning, conducted "back end meetings" in the afternoon and evening, and frequently followed up with prospective buyers by phone.  He avers that he clocked in during his morning tours but was not on the clock for back-end meetings, follow-up phone calls with customers, attending breakfasts and weekend events with customers and attending meetings and trainings.  As a result, Bitner avers that he routinely worked in excess of 40 hours per workweek but almost never clocked in for more than 40 hours.

Bitner further avers that his managers (Tom Delmore, Christine Kwitek, Lance Tinsely and Kyle Mayes) instructed him to clock out after his last morning tour and observed him performing off-the-clock work afterward, including the back-end meetings, phone follow-ups, and customer events.  Based upon his personal experience, he also believes that the requirement of clocking out after morning tours applied equally to all In-House Sales Representatives.

As one of approximately eight Discovery Sales Representatives at the Wisconsin Dells facility, plaintiff Toshia Parker avers that her primary job duty was to sell timeshare properties and promotional packages. In that capacity, she met with customers in a sales office on Wyndham premises after they returned from sales tours.

Parker further avers that her managers (Mike Wilder and Brian Washington) instructed her that she could not be clocked into Wyndham's time clock for more than forty hours per week. Pursuant to those instructions, she regularly worked off the clock in the presence of her managers, without overtime pay and, in some cases, without minimum wage. Finally, she believes other Discovery Sales Representatives were subject to the same policy, because they were also supervised by Wilder and Washington.

Defendants deny ever having any such policies. They state that Wyndham's actual policy unequivocally requires all employees, including sales representatives, to report their hours accurately, and that Wyndham pays for all hours worked. Accordingly, Wyndham argues that any deviation from that policy is based on individual circumstances, such as employee or supervisor misconduct, rather than on a uniform policy, and that this case is not appropriate for collective treatment.

OPINION

**I. Legal Standard for Conditional Certification**

    **A. Two-Step Framework**

Section 216(b) of the FLSA authorizes plaintiffs to bring a "collective action" against an employer to recover unpaid compensation for themselves and on behalf of "other employees similarly situated." 29 U.S.C. § 216(b). Unlike a typical class action lawsuit,

4

where a putative class member not wishing to participate must "opt out" under Federal Rule of Civil Procedure 23, a collective action under the FLSA requires putative class members to "opt in" by filing a written consent to join the action. *Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 579-80 (7th Cir. 1982). In light of this requirement, most courts, including this one, apply a two-step approach to certifying collective actions. *Austin v. CUNA Mut. Ins. Soc'y*, 232 F.R.D. 601, 605 (W.D. Wis. 2006).

The first step is conditional certification. Although conditional certification is not a "mere formality," *Berndt v. Cleary Bldg. Corp.*, No. 11-cv-791-wmc, 2013 WL 3287599, at *7 (W.D. Wis. Jan. 25, 2013), a plaintiff need only make "a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Austin*, 232 F.R.D. at 605 (quoting *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005)). "This standard is 'fairly lenient'; it does not involve adjudicating the merits of the claims, nor does it entail the kind of rigorous analysis typical of class certification under Fed. R. Civ. P. 23." *Fosbinder-Bittorf v. SSM Health Care of Wis., Inc.*, No. 11-cv-592-wmc, 2013 WL 3287634 (W.D. Wis. Mar. 21, 2013), at *4 (internal citations omitted). In determining whether plaintiffs have met their burden, "courts rely on the complaint and any affidavits that have been submitted." *Austin*, 232 F.R.D. at 606. Plaintiffs' materials are the proper focus at this preliminary stage, not defendants'. *Id.* For the purposes of conditional certification, therefore, the court resolves any factual disputes in plaintiffs' favor. *Berndt*, 2013 WL 3287599, at *7. If plaintiffs satisfy this initial burden, the court conditionally certifies a collective action, authorizing both notice to potential class members and discovery by the parties discovery. *Kelly v. Bluegreen Corp.*, 256 F.R.D. 626, 629 (W.D. Wis. 2009).

The second step of the process occurs at the close of discovery, upon a motion for decertification from the defendant. *Id.* At that point, "the court determines whether the plaintiffs are *in fact* similarly situated to those who have opted in." *Id.* (emphasis added). If it becomes clear that the case is not suitable for collective treatment, the court then decertifies the collective action. *See, e.g., Espenscheid v. DirectSat USA, LLC*, No. 09-cv-625-bbc, 2011 WL 2009967, at *7 (W.D. Wis. May 23, 2011).

B.  "Similarly Situated"

To show that the named plaintiff and the putative plaintiffs are similarly situated, the court requires the plaintiff to show that all are "victims of a common policy or plan that [is asserted to have] violated the law." *Freeman v. Total Sec. Mgmt.-Wis., LLC*, No. 12-cv-461-wmc, 2013 WL 4049542, at *5 (Aug. 9, 2013 W.D. Wis.) (quoting *Kelly*, 256 F.R.D. at 629-30) (alteration in original). Essentially, this requires a "factual nexus that connects [the named plaintiff] to other potential plaintiffs as victims of an unlawful practice." *Sjoblom v. Charter Commc'ns, LLC*, 571 F. Supp. 2d 961, 971 (W.D. Wis. 2008). The central question is whether potential plaintiffs "are sufficiently similar to believe a collective action will facilitate efficient resolution of a legal dispute involving claims which share common questions and common answers." *Berndt*, 2013 WL 3287599, at *7.

II. Analysis

A.  Definition of Classes

Plaintiffs ask the court to conditionally certify two separate classes under the FLSA:

> (1) All persons who have been or are currently employed by Defendant as In-House Sales Representatives in the state of Wisconsin at any time during the past three years; and

>    (2) All persons who have been or are currently employed by Defendant as Discovery Sales Representatives in the state of Wisconsin at any time during the past three years.

Accordingly, the court must consider whether named plaintiffs Bitner and Parker have met their respective burdens to show that they were victims of a common policy that, if true, violates the FLSA.

The FLSA requires employees to be paid at least minimum wage for all hours that they work. 29 U.S.C. § 206(a). It also requires that employees be compensated at overtime rates, defined as not less than one and one-half times their regular rate of pay, for any time worked over forty hours in a given workweek. *Id.* at § 207(a). The "mere promulgation of a rule" against uncompensated work is not sufficient to avoid liability. 29 C.F.R. § 785.13. Rather, management must "make every effort" to enforce that rule. *Id.* When an employer knows or has reason to believe that employees are continuing to work, even when technically off the clock, that time is considered work time. *Id.* at § 785.11. In essence, "[w]ork not requested but suffered or permitted is work time" for which the employer must compensate its employees. *Id.*

As a preliminary matter, much of Wyndham's opposition is based on differences between the different classes of sales representatives. (*See* Def.'s Br. Opp'n (dkt. #62) 25-32 (discussing differences between In-House and Discovery Sales Representatives).) This is irrelevant, however, since plaintiffs have requested certification of *two different classes*. (*See* 2d Am. Compl. (dkt. #46) ¶¶ 27-28.) Thus, much of defendant's argument is extraneous to the task at hand, and the court need not delve into the minutiae of any differences between the two proposed classes.

7

Additionally, Wyndham argues that plaintiffs have failed to identify with specificity the policies they allege are unlawful. The court disagrees. Plaintiffs allege that Wyndham required its In-House and Discovery Sales Representatives to under-report hours and to work more than forty hours per week without overtime and minimum wage compensation. This is sufficiently specific to allow the court to determine whether the similarities they allege go to the merits of the case and would facilitate collective treatment.

Wyndham next argues that individualized proof and individual defenses predominate over any common questions in this action, such that a collective action would be unmanageable. (*See* Def.'s Br. Opp'n 34-36.) While this may or may not prove true, predominance is not an appropriate inquiry at the conditional certification stage. *See Fosbinder-Bittorf*, 2013 WL 3287634, at *4 (conditional certification does not involve the "kind of rigorous analysis typical of class certification under Fed. R. Civ. P. 23"). Perhaps defendant intended to argue a lack of *commonality*, rather than predominance,[3] but determining whether plaintiffs *actually are* similarly situated would require making factual findings and is, therefore, a question best left to the decertification stage. *See Viveros v. VPP Grp., LLC*, No. 12-cv-129-bbc, 2013 WL 3733388 (W.D. Wis. July 15, 2013). What matters for the present is whether plaintiffs have presented enough facts to make it *reasonably likely* that, "when the representative plaintiff and the defendant debate liability as between themselves, they are effectively deciding that question for each and every class member." *Freeman*, 2013 WL 4049542, at *5.

---

[3] The "similarly situated" requirement of the FLSA resembles the commonality and typicality requirements of Rule 23. *See Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 771-72 (7th Cir. 2013).

Defendant also contends that conflicts exist between managers and sales representatives, rendering this case inappropriate for class treatment, but that argument also goes nowhere. First, it improperly imports Rule 23's "adequate representation" requirement to the conditional certification analysis; defendant has cited no authority for employing such an analysis. Second, neither *named plaintiff* worked as a manager. Third, the class definition does not by its terms include "managers," but rather employees who have worked as In-House or Discovery Sales Representatives. All of those current and former sales representatives share a common interest in compensation for off-the-clock work allegedly performed in those roles pursuant to Wyndham policy, regardless of whether they have since been promoted to a management position.

### B. Factual Showing

Having addressed defendant's general arguments against conditional certification, the court now turns to plaintiffs' evidence to determine whether they have made the requisite "modest factual showing" that they were victims of a common unlawful policy.

#### i. In-House Sales Representatives

To show that In-House Sales Representatives are subject to a common Wyndham policy requiring them to work off the clock without overtime, plaintiffs have submitted the affidavit from Bitner, as well as from another In-House Sales Representative, Abraham Haupt. Both aver that they worked on the clock in the morning but that managers instructed them to clock out for back-end sales meetings and customer events. Thus, they aver that they regularly worked more than 40 hours per week but were not clocked in for some of that time. Their time records are generally consistent with these assertions,

9

reflecting that usually, Bitner and Haupt clocked out in the late morning or early afternoon. (*See* David Zoeller Decl. Exs. 2, 3 (dkt. #38-2, -3).) In addition, plaintiffs have submitted an affidavit from Thomas Delmore, who worked as an In-House Sales Representative from July 2010 until August 2011, and who managed a team of In-House Sales Representatives until he was terminated in May 2012. Delmore avers that as an In-House Sales Representative, he was instructed by manager Kyle Mays to work off the clock to avoid clocking more than forty hours per week, and that later, as a manager of other In-House Sales Representatives, he instructed his team not to clock 40 hours or more, again at the instruction of Mays and other Wyndham superiors. That Bitner, Haupt and Delmore all aver that their instructions came from managers allows for a reasonable inference that Wyndham maintained an unofficial policy requiring In-House Sales Representatives to clock out even when still working.

In opposition, Wyndham submits declarations from multiple In-House Sales Representatives who aver: (1) that they were always on the clock whenever speaking with timeshare owners or giving sales pitches, and (2) that they were never told they could not record time spent on work-related activities. (*See* Adam Karls Decl. (dkt. #52) ¶¶ 9-10; Chris Brodnicki Decl. (dkt. #53) ¶¶ 10, 13-14; Ernest Lynch Decl. (dkt. #55) ¶¶ 10-11; Greg Metzler Decl. (dkt. #56) ¶¶ 8-9; Larry Lynch Decl. (dkt. #57) ¶¶ 7-13; Margaret Zautke Decl. (dkt. #58) ¶¶ 14-17; Max Keeling Decl. (dkt. #59) ¶¶ 14-15.) While these declarations suggest plaintiffs may have an uphill battle ahead of them in proving the merits of their claim, as previously mentioned, the court resolves all factual disputes in their favor at the conditional certification stage. *Berndt*, 2013 WL 3287599, at *7. For the present, therefore, the court must credit plaintiffs' assertion that they were instructed by managers

and, in Delmore's case, that as a manager he was required to instruct his team members, to clock out before back-end meetings and customer events.[4]

Wyndham also argues that its actual policies unequivocally require employees to account accurately for all time worked, pointing to (1) its employee handbooks and (2) the declaration of Dawn Franson, who administers training to sales representatives and avers that she informs all representatives they must record all time worked.  (*See* Nora Kaitfors Decl. Exs. A, B (dkt. #63-1, -2); Dawn Franson Decl. (dkt. #50) ¶ 7.)  As previously discussed, however, the existence of a rule against uncompensated work time is not enough to absolve an employer from liability.  *See* 29 C.F.R. § 785.13.  Given that Bitner, Haupt and Delmore have all averred that Wyndham managers with supervisory authority instructed them *not* to record all of their time, it is reasonable to infer that the promulgated policies in the employee handbook and espoused in training were Wyndham policy in name only.  In any event, as also noted, conditional certification does not involve adjudication of the *merits* of plaintiffs' claims.  *Foshinder-Bittorf*, 2013 WL 3287634, at *4.  After discovery, Wyndham may certainly try to demonstrate that the "unofficial policy" of which plaintiffs complain did not exist, and that pressure to clock out and continue to work came from "rogue supervisors," but that assumption is not appropriate at the conditional certification stage.[5]

---

[4] The same is true with respect to Wyndham's argument that Bitner's testimony as to his hours and days worked is belied by records of the time recorded.  (*See* Def.'s Br. Opp'n (dkt. #62) 16-17.) Either Bitner or Wyndham could be correct as to the actual hours Bitner spent working, but at this stage, the court resolves that factual dispute in Bitner's favor.

[5] Defendant cites *Saleen v. Waste Mgmt., Inc.*, 649 F. Supp. 2d 937, 941 (D. Minn. 2009), for the proposition that the "mere fact that a small fraction of employees allege that they did not receive the compensation to which they were entitled provides almost no evidence that the reason that these employees were underpaid was because of an unlawful companywide policy," but that case is distinguishable.  In *Saleen*, plaintiffs sought to certify a nationwide class of tens of thousands of

Based on the foregoing, plaintiffs have made the "modest factual showing" that the FLSA requires. Plaintiffs have produced sufficient evidence to suggest that Wyndham maintained a common policy with respect to its Wisconsin In-House Sales Representatives requiring that they clock out after their morning tours and avoid working more than 40 hours per week. If true, this would "effectively strip unique, individual facts out of the liability analysis," *Freeman*, 2013 WL 4049542, at *5, making this case appropriate for collective treatment. Certainly, defendants have also presented evidence suggesting that the alleged policy did *not* actually apply to all In-House Representatives, but the resolution of that factual dispute is appropriately left to a motion for decertification, particularly because plaintiffs have not yet had a chance to depose any of defendant's affiants. Accordingly, the court will grant plaintiffs' motion to certify a class of In-House Sales Representatives pursuant to 29 U.S.C. § 216(b).

ii.   **Discovery Sales Representatives**

Plaintiffs' evidence of a common unlawful policy with respect to Discovery Sales Representatives is weaker than its evidence with respect to In-House Sales Representatives. In a single, supporting declaration, Toshia Parker avers that she routinely worked more than forty hours per week but received neither overtime compensation nor, at times, minimum wage. Consistent with her allegations, her earnings statements do not show her working more than 40 hours, even though she avers that she routinely worked in excess of 40 hours per week. (*Compare* Zoeller Decl. Ex. 4, *with* Parker Decl. (dkt. #40) ¶ 6.).) She further avers that her managers, Mike Wilder and Brian Washington, instructed her that she could

---

employees across 820 facilities in 47 states. In contrast, here, plaintiffs seek to certify a class of employees at *one* facility, which makes it far more likely that they were victims of a common policy.

not be clocked in for more than forty hours per week, and that as a result, she regularly worked off the clock in their presence. Finally, she alleges that she believes this requirement applied equally to all Discovery Sales Representatives, because those sales representatives were also supervised by Wilder and Washington.

Defendant argues that Parker's deposition testimony undermines plaintiffs' theory that Wyndham maintained an unlawful policy with respect to Discovery Sales Representatives. First, defendant points out that Parker frequently recorded hours of well below forty per week, and that when asked why, Parker testified:

> A   Because you have to pay it back.
>
> Q   I see. So you wouldn't record the time because you wouldn't want to pay it back?
>
> A   Yes. You have to pay all of that money back. So as long as we kept it under 40, that was the only concern.
>
> Q   You wouldn't want to have to pay more money back, because the more money you pay back, the less commission you'd earn?
>
> A   Yes.

(Parker Dep. (dkt. #28) 221:3-12.) What matters for conditional certification purposes, however, is that: (1) Parker regularly worked more than forty hours; (2) she did so at her managers' direction and with their knowledge; (3) she was not paid overtime for those hours; and (4) she believes that all Discovery Sales Representatives were subject to those same directions. Her reasons for keeping her own recorded total hours on the low end are not relevant to that inquiry.

Second, defendant argues that "Parker acknowledged no manager ever told her she needed to keep her hours as low as possible or that she had to punch in and out of Wyntime at certain times" (Def.'s Br. Opp'n 12), citing the following testimony:

> Q   Did someone tell you that you had to punch out early?
>
> A   Someone told me not to go over forty hours, yes.
>
> Q   Who was that?
>
> A   Whoever my manager was at the time.

(Parker Dep. 194:22-195:1.)  Parker further testified:

> Q   All the managers who supervised you, [. . .] is it your testimony that all the names you listed in your deposition after 2009 told you that you must not have time recorded for more than forty hours a week?
>
> A   Yes.
>
> Q   They told you this at multiple and various times during your employment?
>
> A   Yes.
>
> Q   And you believe they told other people that?
>
> A   Yes.

(Parker Dep. 195:6-18.)

In context, then, Parker's testimony *supports* plaintiffs' theory that Wyndham maintained a policy of requiring its Discovery Sales Representatives to keep their recorded weekly hours below forty.  That Parker was never told to keep her hours "as low as possible" or to punch in and out "at certain times" has little bearing on plaintiffs' theory of liability, particularly in light of her testimony that she *was* repeatedly told she could not record more than forty hours of time per week.

Defendant has also submitted declarations from other Discovery Sales Representatives, who aver that they have recorded, and been paid for, all hours worked, including overtime hours in some instances. (*See* Elena Lahti Decl. (dkt. #54) ¶ 10 (has been paid for all overtime); Stuart Abel Decl. (dkt. #60) ¶ 9; Zautke Decl. ¶ 10.) They also aver that they were never told they could not record as working time the time they spend waiting for their next tour. (*See* Lahti Decl. ¶ 8; Abel Decl. ¶ 10; Zautke Decl. ¶ 11.)

Given this contradictory evidence, defendant again appears to have a strong argument on the merits that Discovery Sales Representatives were not similarly situated for purposes of FLSA liability. Nevertheless, because of plaintiffs' relatively low burden at conditional certification, and because the court resolves factual disputes in plaintiffs' favor at this stage, the court finds that plaintiffs have shown a reasonable basis to believe that Wyndham required other Discovery Sales Representatives to clock out so as to keep their weekly hours recorded below forty. The court's reasoning stems from the alleged source of those instructions: Parker has averred that she was instructed not to clock in for more than forty hours per week by her managers, Wilder and Washington, who also supervised the other Discovery Sales Representatives in Wisconsin Dells. (*See* Parker Decl. ¶¶ 7-8.) This is enough to suggest that Wyndham maintained an unlawful policy generally applicable to its Discovery Sales Representatives and to justify notice to the proposed class.

**III. Notice**

Plaintiffs next ask the court to authorize notice to the two classes, requesting a 60-day deadline for potential opt-in plaintiffs to return the consent form. They also ask that they be permitted to mail the notice and that Wyndham be required to post the notice in

conspicuous places available to employees, such as bulletin boards, consistent with this court's decisions in cases like *Freeman*, 2013 WL 4049542, at *11, and *Fosbinder-Bittorf*, 2013 WL 3287634, at *7. Defendants do not object to these proposals, and the court concludes they will be generally sufficient.

Defendant does identify several purported problems with plaintiffs' proposed class notice and consent form, however. For the most part, plaintiffs do not object to defendant's proposed changes, which include: (1) adding language that details the potential risks of participating in the lawsuit, modeled on that required by this court's decision in *Freeman*; (2) removing the bolding from portions of the notice addressing the benefits of participation in the lawsuit; (3) revising the consent form to refer to Wyndham Vacation Resorts, Inc., rather than to other Wyndham entities not named as defendants; and (4) removing references to "front-line sales representatives" from paragraph 2 of the consent form, since plaintiffs do not bring collective claims on behalf of front line sales representatives.

These changes appear both warranted and reasonable. Therefore, plaintiffs should add the following language at the end of the section entitled "Effect of Joining this Lawsuit":

> The risks in joining this lawsuit may include: (1) being required to participate in the litigation by testifying at deposition and/or at trial; and (2) having a portion of the defendant's court costs and expenses assessed against you if you do not prevail on your claim.

*See Freeman*, 2013 WL 4049542, at *11. Plaintiffs must also remove the bolding from the text "you are not required to pay any money to participate" in the section "Your Right to

Participate in this Suit."[6]  Finally, plaintiffs should revise the consent form to correctly name the defendant and remove all references to Front Line Sales Representatives.

Defendant also asks that the added language regarding the risks of participating in the lawsuit be bolded and underlined.  Because the court has directed that such emphasis be removed from the text delineating the *benefits* of the suit, there is no reason to over-emphasize the possible *costs*, since that, too, would "paint[] an inaccurate picture of the risk/reward balance for potential class members."  *Id.*

Finally, to facilitate notice, Plaintiffs ask, consistent with this court's decision in *Freeman*, that the court order defendants to produce, within fourteen days:

> a list, in electronic importable format (*e.g.*, Microsoft Excel (.xls)), of all Sales Representatives employed by Wyndham between June 25, 2013 and the date of the Court's order, including their name, mailing address, dates of employment as a Sales Representative, and employee identification number.

(Pls.' Br. Supp. Conditional Certification (dkt. #37) 20.)  Absent some other agreement by the parties or a specific objection by defendants to the terms or timing of this disclosure within the next seven days, the court will grant plaintiffs' request.[7]  The court encourages counsel to send out notice sooner rather than later to encourage additional opt-in plaintiffs to join the suit; to facilitate the quick dissemination of the notice, the court will expedite its review of any objection by defendant.

---

[6] The court agrees with plaintiffs that the language regarding the opt-in deadline may remain bolded, since that section informs the recipient of the opt-in deadline without extolling the potential benefits of joining the suit.

[7] By way of example only, the parties may agree to modify the above request to include only information about Discovery and In-House Sales Representatives, since plaintiffs have not sought collective treatment for Front Line Sales Representatives.  In the event that defendant does have some objection to plaintiffs' request that the parties cannot resolve, defendant may defer producing the specific information to which the objection applies until the court has resolved the dispute.

**IV. Equitable Tolling**

Plaintiffs have also filed a motion for equitable tolling of the statute of limitations on the collective claims. A court may equitably toll the statute of limitations where (1) the party has diligently pursued his or her rights and (2) some extraordinary circumstance stood in the way and prevented timely filing. *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013). Courts have disagreed as to whether the court's delay in ruling on a motion for conditional certification, without more, constitutes extraordinary circumstances. *Compare, e.g.*, *Bergman v. Kindred Healthcare, Inc.*, 949 F. Supp. 2d 852, 860-61 (N.D. Ill. 2013) (tolling statute of limitations); *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012) (same); *Putnam v. Galaxy 1 Mktg., Inc.*, 276 F.R.D. 264, 276 (S.D. Iowa 2011) (same), *with Greenstein v. Meredith Corp.*, No. 11-2399-RDR, 2013 WL 4028732 (D. Kan. Aug. 7, 2013) (denying motion for equitable tolling); *Powers v. Centennial Commc'ns Corp.*, No. 1:08-cv-208-PPS, 2010 WL 746776, at *2-4 (N.D. Ind. Feb. 26, 2010) (same); *Espenscheid v. DirectSat USA, LLC,* No. 09-cv-625-bbc 2011 U.S. Dist. LEXIS 157339 (W.D. Wis. June 7, 2010) (declining to equitably toll statute of limitations pending appeal of decertification order). The Seventh Circuit has not definitively ruled on this issue, although it has held in other contexts that equitable tolling is to be "used sparingly, reserved for those situations in which extraordinary circumstances prevent a party from filing on time." *Wilson v. Battles*, 302 F.3d 745, 749 (7th Cir. 2002). "In most cases in which equitable tolling is invoked, the statute of limitations has run *before* the plaintiff obtained information essential to deciding whether

he had a claim."[8]  *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 453 (7th Cir. 1990) (emphasis in original).

In light of the high standard for equitable tolling, the court declines to toll the statute of limitations at this time. While a delay of seven months is not ideal, it does not appear to constitute an *extraordinary* circumstance, let alone one that prevented potential opt-in plaintiffs from timely joining this suit. Indeed, some plaintiffs *have* opted in since this lawsuit began, even without the benefit of the court-authorized notice that plaintiffs seek. (*See, e.g.*, dkt. #67-1, 71-1.) Plaintiffs have offered no reason why delay on the motion for conditional certification rendered them unable to obtain information necessary to determining whether they had a viable FLSA claim. *Cf. Powers*, 2010 WL 746776, at *3 ("[N]othing prevented potential opt-in plaintiffs from filing a claim while the motion was under consideration. Notably, Powers fails to point to any potential opt-in plaintiffs who would have timely opted-in had the Court resolved the motion to certify sooner.").

Finally, the present denial is without prejudice to individual opt-in plaintiffs moving to equitably toll the statute of limitations on their claims. It is possible that individual plaintiffs may be able to demonstrate, under their particular circumstances, that they were actually *prevented* from recognizing they might have a FLSA claim by the lack of court-

---

[8] Defendant also points out an additional wrinkle in plaintiffs' request: the order plaintiffs seek would apply not to those plaintiffs who have already opted in but to those who have not. The Federal Circuit has previously vacated a district court's order for equitably tolling because it "affected no right of any party to the suit." *See United States v. Cook*, 795 F.2d 987, 994 (Fed. Cir. 1986). The employees who might potentially have benefitted from tolling had not yet filed claims and were, therefore, not yet before the court. *Id.* The Federal Circuit concluded on those grounds that the order was premature and noted that, "[w]hen and if the time comes, the district court will presumably apply the doctrine of equitable tolling consistently with Congress' intent in enacting the particular statutory scheme set forth in FLSA." *Id.* Because the court concludes that equitable tolling is not warranted for other reasons, it need not determine whether to adopt the rationale of *Cook* in this case.

facilitated notice coupled with some other circumstances. Should this be the case, those plaintiffs may seek equitable tolling of their claims, keeping in mind that they will have to demonstrate both diligence and extraordinary circumstances that go beyond the mere delays of litigation.

## ORDER

IT IS ORDERED that:

1) Plaintiffs' motion for conditional certification and court-facilitated class notice (dkt. #36) is GRANTED, subject to the modifications set forth above.

2) Absent objection within seven days, defendants shall produce to plaintiffs, within fourteen days of this order, a list, in electronic importable format (e.g., Microsoft Excel (.xls)), of all Sales Representatives employed by Wyndham between June 25, 2013 and July 25, 2014, including their name, mailing address, dates of employment as a Sales Representative, and employee identification number.

3) Defendant's motion to file a reply (dkt. #80) is DENIED as moot.

4) Plaintiffs' motion for equitable tolling (dkt. #82) is DENIED.

5) A telephonic scheduling conference will be held on July 30, 2014, at 2:00 p.m. with Magistrate Judge Crocker to reestablish deadlines. Plaintiffs shall initiate the call to the court.

Entered this 25th day of July, 2014.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge